## LEISHERNESS *versus* BERRY.

A party, who is not allowed to prove a fact which could have no influence on the determination of the cause, has no ground for exceptions.

A person in possession of logs claiming them as his own, upon which there are lien claims, is liable for their value, if it does not exceed the lien claims.

But for those only will he be liable, which he holds by an *actual,* not a *constructive* possession.

Thus, where the defendant purchased a lot of logs lying in a place distant from him, took a bill of sale and under it obtained possession of a part, and designed to secure the residue; in an action of trespass against him by one having a lien claim upon them; — *Held,* that he was liable for the value of those *only,* which he had *actually* received.

ON EXCEPTIONS from *Nisi Prius,* TENNEY, J., presiding.
TRESPASS. The writ was dated July 20, 1852.

Under a written contract, the plaintiff cut and hauled for J. W. Lary, a large lot of logs in the winter of 1850 and 1851, in the valley of Spider river, Lower Canada. They were landed upon the round pond in this State.

A part of the contract was in these words; "Said Lary does give to said Leisherness a good and perfect lien upon the logs for security for their pay in full for hauling the same."

The plaintiff introduced W. R. Leisherness, who was objected to on account of interest. He assisted to put in teams as one of the contracting parties, and so operated, but after the operation had ended, in the spring of 1851, he gave up to plaintiff all the interest he had therein, in consideration of a discharge from all liability in the matter.

A release was also executed by the plaintiff and delivered to the witness, and he was allowed to testify against the objection of defendant.

Some evidence was given that the logs were not cut into the lengths designated in the contract, but it further appeared that Lary was in the woods frequently during the winter, and directed as to the cutting, and was satisfied with the logs landed.

Evidence was produced, that the defendant stated in August, 1851, that he had traded with William Atkinson for the said logs and had taken a bill of sale of them at $9,50 per M.

The quantity cut and hauled was estimated by plaintiff's witnesses to be about 400 M.; by those called on the other side, much less.

It was in evidence by one witness that he drove a portion of them for defendant in the spring of 1852, that the defendant was afraid that Atkinson would not get them to the Forks, and had engaged another person to drive them with his.

The purchase of Atkinson was made in the fall of 1851. The quantity the defendant had actually received at the time of the commencement of this suit did not distinctly appear, but it was only a part of the logs cut by plaintiff.

The defendant offered in evidence a bill of sale of the logs from Lary to Atkinson, dated Dec. 1850, with proof of their delivery, of which plaintiff had no knowledge; and it was excluded by the Court.

Among the instructions given to the jury, were the following: — *that* if the defendant took a bill of sale of all the logs of Atkinson, hauled by the plaintiff, provided the lien

existed thereon, and before the date of plaintiff's writ, the defendant received considerable portions of the logs by virtue of the bill of sale, and claimed and intended to have all of the logs included in the description of the logs in the bill of sale, and he had the same possession which purchasers are required to have in such property, in order to vest in them the title against all others claiming under the vendor in any way; the jury would be authorized to hold him responsible for such amount, (if the plaintiff was entitled to recover in other respects,) as would be equal to the sum to which the plaintiff was entitled from Lary, and was covered by the lien also, but not to exceed the value of the logs so received by the defendant.

The defendant requested several instructions, some of which were withheld, but it becomes unnecessary to state them.

The verdict was returned for plaintiff. The defendant excepted to the rulings and instructions given.

*J. S. Abbott,* for the exceptions.

*Foster, contra.*

CUTTING, J. — The plaintiff claims to be the owner of the logs in controversy, by virtue of a lien created by the contract between himself and G. W. Lary. That the logs were cut and hauled by the plaintiff under the contract, there appears to be sufficient evidence, and the testimony introduced by the defendant to show a substitution of a verbal for the written contract, so as to vacate the lien, is wholly insufficient for that purpose.

The plaintiff then traced the logs, or some of them, into the possession of the defendant, who must account for the same to the plaintiff in this action, unless he can show the superior title.

Waterman R. Leisherness, a witness introduced by the plaintiff, was objected to, on account of interest. It appears that he was a member of the firm of William Leisherness & Co., who, as it was originally contemplated, were to be associ-

Leisherness *v.* Berry.

ated with the plaintiff as a party to the contract, but subsequently refused so to do, and the signatures of the members of that firm are only found on the back of the contract as assignors of that in which they apparently had no interest. If the witness subsequently acquired any interest in the concern *aliunde,* his release to the plaintiff operated to discharge it, and to make him competent to testify.

The defendant attempted to establish title in himself from Lary through one Atkinson, and if such attempt had been successful, it is difficult to perceive how it could have affected the rights of the plaintiff, whose interest was superior to that of Lary, and more especially, if the plaintiff had no knowledge of, and gave no consent to, the transaction.

But the instructions embraced in the general charge to the jury present the question as to the extent of the defendant's liability at the time this action was commenced, or in other words, whether he was liable for more logs than he had then taken into his actual possession, although he claimed and was in diligent pursuit of the whole lot.

In determining what constitutes a sufficient delivery under a bill of sale, in order to vest the property in the vendee as against all other persons claiming in any way under the vendor, the nature of the property to be delivered and its situation at the time are to be considered, whether it be a vessel at sea, logs in a river, or merchandize on land. The delivery may be actual, symbolical or constructive. And it is the reception of property under an actual delivery, that renders the vendee liable to the true owner in an action for the wrongful taking and conversion. It does not appear when the defendant purchased the logs of Atkinson, whether they were in the river or on the shore, in one or in separate lots, and the instructions must be considered as having relation to the logs in controversy.

In *Shurtleff* v. *Willard,* 19 Pick. 210, the Court, in their opinion, use this language; "But the defendant's counsel, while they admit the rule, (a delivery of a part for the whole,) deny its application to chattels scattered as these

Leisherness *v.* Berry.

were, in different and distant places. They contend that it is limited to the same parcel or mass of goods, as the cargo of a vessel or the stock of goods in a particular store or place. But we know of no such limitation. It would nearly destroy the utility of the rule and essentially embarrass and obstruct constructive deliveries."

So, in *Boynton* v. *Veazie*, 24 Maine, 286, it was held, that the delivery of a raft of boards, in the dock at Bangor, constituted a sufficient constructive delivery of all the logs of the same mark included in the bill of sale, and said to be in the boom at Oldtown.

According to this well established rule of law, the defendant might have a perfect title to the logs as against his vendor and all others in any way claiming under him, although he might never have taken possession of the larger portion except by construction, and was according to the instructions a trespasser *by construction.*

Without doubt, the defendant, at the time he took his bill of sale, designed to purchase all the lien logs, and intended to take actual possession of the same as fast as practicable, but suppose with all due diligence, he had not, and could not, receive into his actual possession more of the logs than had been run to him at the date of the writ, they might have been taken by other persons, perhaps by the plaintiff himself; and notwithstanding, the instructions would make him accountable for the whole, and thus render a person liable as a trespasser, when in fact the proof shows that he only entertained the design to commit a trespass. But in this case there was not even such an intention, the defendant took the bill of sale with the full belief that the vendor had a perfect title, and if, under the circumstances, he is made to pay for those logs actually delivered to him, or which came into his actual possession, he would satisfy all reasonable requirements of the law.

*Exceptions sustained, verdict set aside,*
*and new trial granted.*

SHEPLEY, C. J., and RICE and APPLETON J. J., concurred.