HALL vs. HINCKLEY and others.

MECHANICS' LIENS. (1–3) *Order of priority.* (3–7) *Mode of enforcement.* (7–9) *Remedy of junior lien holders. Equity jurisdiction.*

1. Under our statute "Of the lien of mechanics and others" (R. S., ch. 153), the lien for labor or materials employed in the construction of a building (where a petition is duly filed) takes precedence of liens of any other kind (as by mortgage, judgment and the like) attaching subsequently to the commencement of the building.

2. Where there are several creditors claiming liens under said statute for labor and materials used in constructing the same building, their order of priority among themselves is determined by the dates of the filing of their respective petitions. *Dobbs v. Green* (2 Wis., 228), and *Dobbs v. Enearl* (4 Wis., 451), as to this point, approved and followed.

3. The lien first fixed by the filing of the petition remains paramount to all other similar liens, in case an action to enforce it be instituted within the time limited by the statute.

4. Where a statute gives a new right, and provides a specific remedy, such right can be vindicated only in the way thus prescribed.

Hall vs. Hinckley and others.

5. The lien of a mechanic or material man, being created by the statute, can be enforced only in the manner provided by the statute, viz., by an action at law against the debtor, and a sale on execution as in other legal actions.

6. The decision in *Marsh v. Frazer* (27 Wis., 596), that the action to enforce a mechanic's lien was one " at law on contract," approved. The particulars, as to parties, etc., in which such action, as regulated by the statute, differs from ordinary actions at law, pointed out per DIXON, C. J.

7. Except under special circumstances disclosing particular grounds for its interference, equity has no jurisdiction to enforce the lien thus created; nor can it enjoin the prosecution of an action at law to enforce one such lien, upon the application of a creditor having another lien of the same kind, on the ground that the latter is not made a party to such legal action; nor does the equitable doctrine of equality among lienholders apply to such a case.

8. The remedy of junior lien creditors who have perfected their claims by judgment, is by bidding at the sale under the prior lien.

9. *It seems* that a subsequent lienholder under the statute, if he can aver illegality in the claims alleged in a petition prior to his own, impeach their amount, charge fraud or collusion therein, or set up a higher equity in his own favor, may file his bill in equity to have such claims set aside or postponed in his favor. Per DIXON, C. J.

APPEAL from the Circuit Court for *St. Croix* County.
*Henry A. Wilson*, for the appellants.
*Cyrus L. Hall* and *Glover & Clinton*, for respondent.

DIXON, C. J. This is an appeal from an order of the circuit court of St. Croix county denying a motion of the defendants to vacate an injunctional order previously made by the judge at chambers. The chamber order was made on application of the plaintiff in this action, and upon the facts set forth in an affidavit made by him for that purpose. No complaint appears to have been filed in the action at the time the chamber order was granted, nor when the motion to vacate was made, so that the case stood there and is presented here upon the facts alone contained in the affidavit. The chamber order was made on the 8th of August, 1872, and the order from

which this appeal is taken, at the November term of the court following. The facts may be thus briefly stated : The plaintiff is a creditor of the defendant *Hinckley*, claiming to have a lien for the amount of his debt upon a building erected by *Hinckley* in the year 1871, and upon the lots on which the same stands, in the city of Hudson. The plaintiff's demand against *Hinckley* is for materials sold and delivered to him, and used by him in the construction of the building, between the 8th day of July and the 14th day of December, 1871. The foregoing are the dates respectively of the first and last items of the plaintiff's account. The plaintiff filed his petition in due form of law for a lien upon the building and lots, in the office of the clerk of the circuit court, on the 12th of June, 1872. No action appears to have been instituted by the plaintiff in prosecution of such lien in pursuance of the provisions of the lien law, but only this action, the nature and object of which, as shown by the affidavit, will presently be stated.

The defendants *Fowler*, *White & Jones* and *Birch*, are also lien creditors of their codefendant *Hinckley*, in respect of materials respectively furnished by them and used in the construction of the same building. The liens of the latter were perfected by judgments severally obtained by them under the lien law in May, 1872. The date of the filing of their respective petitions for a lien does not appear, but it is shown that their actions were all commenced on the same day, April 13, 1872, and that judgment was rendered in each at the following May term of the court. Each judgment was in the form prescribed by the statute giving the lien, and declared the same to be a lien upon the building and lots before any other lien which originated subsequent to the commencement of the building, which was adjudged to have been on the 11th day of July, 1871. The demands or accounts upon which the judgments were so respectively obtained, accrued as follows: that of *Fowler* between July 17th and October 2d; that of *White & Jones* between August 4th and September 5th; and that of

*Birch* between August 4th and October 11th; all in the year 1871. Executions were issued upon the judgments, and delivered to the defendant *McCabe*, the sheriff of the county, on the 24th of June, 1872; and the building and premises were levied upon and advertised to be sold on the 10th day of August, 1872.

This action was commenced on the same day the affidavit and injunctional order were made, August 8, 1872 ; and the object of it, as stated in the affidavit, is to foreclose the lien of the plaintiff, and to obtain a decree compelling the application of the proceeds of the sale of the building and of the right, title and interest of the defendant *Hinckley* in and to the lots, to the payment of the lien of the plaintiff before any application thereof to the payment of the liens of the defendants, and to restrain the sale of the building and lots under and by virtue of the executions. The plaintiff avers in the affidavit that his lien is equitably prior to the liens of the defendants, and of right ought to be first satisfied from the proceeds of the sale of the building and lots.

It will be seen, from the above statement of facts, that the plaintiff claims precedence of the lien creditor defendants because the first item of his account for materials furnished is of earlier date than any of theirs; and also that he claims the right to work out and foreclose his lien by this proceeding in equity, instead of enforcing it by the appropriate action at law given by the statute conferring the lien. The questions thus presented under the statute entitled " Of the lien of mechanics and others " (R. S., ch. 153; 2 Tay. Stats., 1761), are not only important, but are new in this court, except so far as they were incidentally considered in the early cases of *Dobbs v. Green*, 2 Wis., 228, and *Dobbs v. Enearl*, 4 Wis., 451. The authority of those decisions, so far as they go, is certainly very strongly against both positions here assumed by the plaintiff. In the last named case the court is reported to have said that " the lien is created by the filing of the petition." This was

very strong language — stronger than the exigencies of the case seemed to require, or than we should feel justified in using, in view of what we consider a correct exposition of the statute. The statute creates the lien, while the filing of the petition, for most purposes though not for all, fixes the date and priority of it. For the purpose of displacing or subordinating a lien of any other kind, as by mortgage, judgment and the like, acquired prior to the filing of the petition but subsequent to the commencement of the building, the statute in effect declares that the lien for labor or materials expended in the construction shall exist from the time the building was commenced. For the purpose of establishing priority of right as between the different lien creditors, or those performing the labor and furnishing the materials, this court has held, in the cases above referred to, that the lien is created or fixed by the filing of the petition. If the view thus taken was correct and is adhered to, it is necessarily decisive of the question of priority here presented, and also indicates that there is no jurisdiction in equity to foreclose the lien in a case like this.

Although contrary to our first impression, and we presume, likewise, to that which has generally obtained in the minds of the profession, a careful examination has satisfied us of the correctness of the view thus early taken of the statute, and that it should be sustained. The impression, though certainly not well settled or defined, has existed with us, and we doubt not more or less with the profession, that, as between the lien holders themselves, there was no priority under the statute, but that the lien of each had relation to the commencement of the building, so that all must share alike or *pro rata* in the proceeds of the sale, as being the result of the contributions of all, in the proportion of the value of the labor performed and materials furnished by each. This doctrine of equitable distribution or equality among the lien holders, the reason and justice of which are so well presented by Judge THURMAN in a like case (*Choteau v. Thompson*, 2 Ohio St., 128, 129), finds no express

sanction whatever in the language of our statute. The statute of Ohio, under which the decision just referred to was made, did contain express provisions showing that the legislature intended priorities should not exist as between the different lien creditors.

The first section of the statute in terms provides that the lien of the mechanic or material man shall take precedence of any other lien which originated subsequent to the commencement of the building; but in all other respects it is entirely silent on the question of priority. It does not say that there shall or shall not be priority of right or of payment as between the lien holders themselves. So far as any such priority exists, or when or how it may be acquired or enforced, the matter is left entirely open to judicial determination upon consideration of the whole language of the statute and of all its various provisions. If the question had arisen upon the language of the first section alone, or if upon the language of that section with a further provision that the lien should be foreclosed by suit in equity, the maxim of that court, that equality is equity, might then have been held applicable; from which it would have followed that the proceeds of the sale were to be distributed among the lien creditors proportionately to the amounts of their respective demands. With the equitable remedy provided, or with no specific remedy, in which case that in equity must have been preferred and adopted, the doctrine of equality of lien and equal right of payment might have prevailed, unless there was something in the statute expressly forbidding it. In that case all the lien creditors must have been made parties to the suit; and, there being but one sale under the direction of the court of chancery, there could have been no difficulty in ascertaining the share of each creditor, and in dividing the proceeds.

But in determining this question of equality of payment, or, if it be found the legislature did not so intend, then the question of priority of lien, or when and how such priority arises, reference must be had not alone to the section of the statute

giving the lien, but also to its other provisions, and especially to those prescribing the remedy, where one has been given. It is a cardinal rule in the construction of statutes, that, where a new right has been given and a specific remedy provided by statute, the right can be vindicated in no other way than that prescribed by the statute. *Arnet v. Insurance Co.*, 22 Wis., 516, and authorities cited. The statute under consideration gives a new right, and does provide a specific remedy for the enforcement of such right, and that remedy is wholly inconsistent with the supposition of jurisdiction in equity, or that the legislature intended any application of the equitable doctrine of equality among the lienholders. The remedy prescribed is by action at law, denominated in the statute, "personal action against the debtor, his executors or administrators;" and the judgment recovered is a strictly legal one, which must be enforced by sale upon execution as in other legal actions. Specific provision is made that "execution may issue and be levied upon the premises subject to such lien, and sale thereof be made in the manner prescribed by law in ordinary cases." Notice of the time and place of sale must be given as in other cases of the sale of real estate on executions ; and it is declared that the "officer shall give the purchaser a deed of conveyance of the premises sold, *which shall be valid and effectual to pass all the right, title and interest of the defendant* in and to said premises absolutely, whether the same be held in fee simple, for life, or for years." This court has expressly decided that the remedy thus given is "an action at law on contract." *Marsh v. Fraser*, 27 Wis., 596. It differs from other such actions only in respect of the specific lien given, and of the requirement that a petition therefor shall be filed, and also in the further particular that where the plaintiff is a subcontractor, the owner of the building, as well as the principal debtor, may be made a party to the action. And in addition this court has determined, that where the premises have been sold after completion of the building, or after the materials have been furnished or

the labor performed, and before the filing of the petition or the commencement of the action, the purchaser should be made a party. *McCoy v. Quick*, 30 Wis., 521. With these exceptions, which give to the action partially the character of a proceeding *in rem*, but not, however, as this court has held, divesting it of the character of an action at law, it differs not at all from other personal remedies obtained in courts of law.

It results very clearly, we think, from this examination of the statute, that, except under special circumstances, disclosing particular grounds for equitable interference, equity has no jurisdiction to enforce or foreclose the lien, and consequently that the rule of equality, which is the creature of that court and is incapable of application in a court of law, was not intended by the legislature. It follows also very clearly, as it seems to us, that equity has no power to interfere with or arrest the proceedings of a lien creditor in an action prosecuted by him in pursuance of the provisions of the statute. The language of the statute is clear and peremptory, that he shall have such right without making the other lien creditors parties, and that he shall have judgment, may issue execution and sell, and the effect of the sale is positively declared. Under these circumstances it can hardly be said, as it sometimes has been under other lien laws less explicit in terms, that there are two principles coming in conflict; the one, that equality is equity; the other, that he who is first in time is better in right. *Mc-Cullom v. Richardson*, 2 Handy, 277. The statute, taken as a whole, is not ambiguous upon this point, but plainly indicates that the latter principle was intended and must prevail.

It being settled that the principle of equality must be rejected, and that priority of right must or may exist in favor of some one or more of the lien creditors as against the others, the question arises, how or upon what circumstances such priority is to be determined. Counsel for the plaintiff contend that the creditor furnishing the first material, or who commences first in point of time to do so, or who performs the first

day's labor, has it; but there would exist very great practical difficulty and uncertainty in the application of such a rule. Priority would then rest altogether upon matter *in pais*, the evidence of which might be doubtful and uncertain, instead of upon matter of record, which is clear and certain. This would be so unless effect, conclusive as against the other creditors, were to be given to the statement of time contained in the petition of the creditor claiming priority. But no such effect could be given to the statement. The other creditors, not being parties to the suit, would not be bound by the statement nor the judgment; and hence cross actions and subsequent litigation must ensue. But more than this, it is contrary to the rule established by this court in the cases above referred to, and which, on well settled common law principles, we regard as the correct one. Wherever it is a race of diligence among creditors, the maxim, *qui prior est in tempore potior est in jure*, applies, and he who takes the first step, or first perfects the proceeding requisite in law to establish his right, thereby acquires priority; and those who come after in pursuit of the same remedy, must take it subject to the right so acquired. The statute requires the filing of a petition, and the doing of that, this court has said, fixes the lien. It does so, and the lien first fixed remains first and paramount to all others, provided the action be instituted within the time prescribed by the statute. The remedy of the junior lien creditors who have perfected their claims by judgment, is by bidding at the sale under the prior lien. As observed by the court in *Kaylor v. O'Connor*, 1 E. D. Smith, 672, the statute would in this respect seem to have established a relation among lien holders, similar to that existing between judgment creditors. Those whose judgments are subsequent, were not parties to the suits in which the prior judgments were recovered; and yet their judgments are postponed to the full amount of such prior judgments, without an opportunity to contest the claim on which the latter were rendered, or its amount. If they desire to impeach them,

the subsequent judgment creditors must become *actors*, and go themselves into court with the grounds of their impeachment.

And the remarks of the same court respecting the equitable remedy of a subsequent lien holder, alleging fraud, mistake or illegality in a prior lien, are no doubt equally applicable to cases of the kind arising under our own statute. The court say: "A. subsequent lien holder, finding alleged prior liens (of which he necessarily had notice by the very fact of their being filed), if he can aver their illegality, set up a higher equity in his own favor, impeach their amount, or charge fraud or collusion therein to his prejudice, may undoubtedly file his complaint in equity, and, upon the general principles of equity, claim an investigation of their merits, and have them set aside or postponed; and if, with constructive notice of their existence, he does not interfere, it is no injustice to him to say that neither the owner nor the court are bound to invite him to come and contest them."

The order appealed from must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*By the Court.*— It is so ordered.