PETER HAIFLEY v. ISAAC HAYNES.

*Log Lien Law—Act 185 of 1873.*

The lien for cutting logs provided by Act 185 of 1873 cannot be enforced as against those who have purchased from the debtor without notice of the claimant's lien as shown by his petition on file or by his actual possession.

Error to Kent.    Submitted Oct. 18.    Decided Oct. 30.

REPLEVIN.    The facts are in the opinion.

*Taggart, Simonds & Fletcher* (on brief) for plaintiff in

error.   Actual or constructive notice is as necessary to the validity of proceedings *in rem* as actual notice is in proceedings *in personam*, *Woodruff v. Taylor*, 20 Vt., 65; *Windsor v. McVeigh*, 93 U. S., 274, though the idea that legal proceedings did not bind a person not a party to them, and that his right would be sufficiently protected by giving him an opportunity to assail them, seems to be held in *Perkins v. Pike*, 42 Me., 141; *Parks v. Crockett*, 61 Me., 489.

*Hughes, O'Brien & Smiley* for defendant in error.   A subsequent purchaser is not concluded by attachment proceedings under a lien law, from asserting his rights, and contesting the validity of the lien in a replevin suit, *Redington v. Frye*, 43 Me., 587; *Munger v. Lenroot*, 32 Wis., 541; *Winslow v. Urquhart*, 39 Wis., 260.

GRAVES, J.   This record exhibits a conflict between proceedings under the statute to institute and enforce a lien against saw logs and proceedings by replevin for the same logs.

One Frank B. Seeley employed Henry Whitney, to fall, cut into logs, haul, bank and place in Sand lake over two million and a quarter feet of logs.   Whitney claimed to have completed the job on or about October 6th, 1876, and on the 17th of that month he filed his petition under the second section of the act.   1 Sess. L., 1873, p. 466.   He stated the amount due him for getting out the logs to be $2441.25, and insisted upon a lien therefor.   October 24th, 1876, he procured an attachment to enforce the lien, and on the 27th of that month the defendant in error, who was the sheriff, seized a large amount of the logs pursuant to the attachment.

November 11th, 1876, the plaintiff in error, claiming as purchaser from Seeley, sued out a writ of replevin against the sheriff for the logs, and on the 13th of that month they were taken from him by the coroner pursuant to the writ of replevin.

Whitney subsequently carried on proceedings in the

attachment case, ostensibly under the lien law, and took a personal judgment in the usual form against Seeley for $2,269.78. Subsequently to this the replevin suit was brought to trial and the jury found that Haifley was the general owner of the logs subject to the lien of Whitney for $2,335.76, under which lien and the attachment proceedings the sheriff, Haynes, had a special property amounting to seven hundred dollars; and the logs seized having been delivered to Haifley on the writ judgment was awarded against him in favor of Haynes for the amount of the special property, seven hundred dollars.

The date of the judgment in the attachment proceeding does not appear in the printed record. Neither does the date of the issue in the replevin suit. But this is not now important. Haifley alone brought error. Haynes acquiesced. Several questions of some difficulty were raised on the trial, and are discussed in the briefs of counsel. We shall not examine them. In view of the peculiar scope and character of this lien law and in view of the entanglements in the two cases,—the bearing of the objections against setting up the lien proceedings against Haifley, and considering the theory of Haynes' defense we feel compelled to notice a difficulty in Whitney's claim which cannot be overcome. Even if we should generally concur with counsel on the part of Haynes it would be needful at last to consider this point. The difficulty in question lies on the face of the proceedings. It was distinctly explained in the petition. This was right. The fact itself could not be avoided. No form of statement could help it, and it was the better course to present it fairly by the petition. It is there declared as matter of fact and hence admitted that previous to the petition Seeley had sold 1250 of the logs to Haifley and had given him possession and had transferred the balance to Norman Carpenter. It was therefore shown by the petition that all right and title had previously passed from Seeley to purchasers, and that at the very time of making the petition to notify the public according to the statute no right or interest existed in Seeley. It is plain that justice and policy as well as precedent require a rigid

construction of this statute to hinder its operation so far as may be against valuable rights, and especially where a contrary view would imperil the rights and interests of innocent third parties. The act is very imperfect, and great difficulty must be expected in any attempt to administer its provisions in cases much complicated and where adverse and repugnant interests and interfering rights and claims require to be settled. The first section declares that a lien shall exist in the cases mentioned and that it shall take precedence over all other claims upon the property. But the second and third sections prescribe limits. Although the first section says there shall be a lien, the others provide that it shall not exist, *first*, at the expiration "of thirty days after the completion or last day of such labor or services" if within that time no statement or petition is made and filed; and *second*, notwithstanding such petition or statement may have been seasonably filed it shall not exist at the end of three months from such filing unless meanwhile a suit to enforce the lien is commenced. These provisions are positive and fundamental. Unless the prescribed conditions are complied with the lien is absolutely gone. But while these conditions are imposed and made indispensable under all circumstances and in all cases to the continued existence of any lien, there is no express provision on the other hand that in the mean time no statement or petition need be filed and that without it the lien will exist and stand and override the rights of honest purchasers who have no means of knowing any thing about it. No doubt the frame work of the act would allow this to be implied if any thing short of a very close construction could be safely indulged. No doubt the act is abstractly susceptible of an implication that a party may without any writing or possession and without giving notice by record or otherwise, maintain and assert a right of lien paramount to the title of a bona fide purchaser from the actual owner and possessor. But when the question is upon the existence of so extravagant a regulation, a provision so replete with danger, and as part of a scheme quite imperfect in itself, it is the duty of the court to

pause for an explicit, an express enactment by the Legislature. Now the party entitled is not required to wait. He can file his statement or petition without any delay. He need not defer until third parties have purchased. And as it is, the only safe view to be taken is to consider the law to mean that as against purchasers at any rate from the debtor (the claimant not being in possession) the lien will not stand at all if at the time of purchase after completion of the work there is no statement or petition on file. The purchaser may infer that no lien is insisted on. As already stated, Whitney's petition showed that Haifley had previously purchased. It therefore showed that the case did not enable him to assert any lien against Haifley. He had allowed this change of title to take place without having possession and without asserting any claim under the statute and in the mode contemplated by the statute and Haifley was entitled to act upon the supposition that there was no incumbrance under this statute.

If this view is correct it follows that Haynes' justification failed, that the allowance of it was error and that the judgment should be reversed with costs and a new trial ordered.

COOLEY, C. J., and CAMPBELL, J., concurred.

MARSTON, J., did not sit in this case.