Smith vs. The Shell Lake Lumber Co., imp.

SMITH, Respondent, vs. THE SHELL LAKE LUMBER COMPANY, imp., Appellant.

*January 11 — February 1, 1887.*

*Logs and lumber: Lien for labor: Purchaser without notice.*

A lien for the amount due for labor performed in manufacturing logs into lumber cannot be enforced as against a *bona fide* purchaser of the lumber for value, who purchased before the filing of the claim for such lien and without notice, either actual or constructive, of the lien.

TAYLOR, J., dissents.

APPEAL from the Circuit Court for *Chippewa* County.

Action to enforce a lien upon certain lumber and shingles for the amount due for labor and services performed in the manufacture thereof. The facts are sufficiently stated in the opinions. The defendant *The Shell Lake Lumber Company* appealed from a judgment in favor of the plaintiff.

For the appellant there was a brief by *Marshall & Jenkins,* and oral argument by *Mr. Jenkins.*

For the respondent there was a brief by *Fayette Marsh* and *Clapp & Macartney,* and oral argument by *Mr. Clapp.*

ORTON, J. In 1883 and 1884 the plaintiff, with others, performed work and labor for the defendant Eugene Smith, and on his pine logs, by manufacturing therefrom a large lot of shingles. On the 5th day of April of the same year,

1884, the plaintiff duly filed his claim for a lien on said shingles, and on the 11th day of April thereafter he brought his action against the defendant, and procured an attach-ment, and the attachment was duly served by levying upon said shingles, then being in the *possession* of the *Shell Lake Lumber Company*, on both sides of the side track of the rail-road, and by the service of summons upon the said company. According to the stipulation of the parties and the finding of the circuit court, before the filing of said claim for a lien thereon, and without any notice or knowledge of the plaint-iff's claim for a lien or of the existence of the indebtedness of the said defendant to the plaintiff on account of said work and labor, the said defendant sold and delivered a part of said shingles to one David Joyce, and the other part thereof to said *Shell Lake Lumber Company*, and they pur-chased the same of the said defendant in due course of trade, and paid the said defendant the purchase money thereof, and all of said shingles were so left in the posses-sion of said company.   These are all the facts necessary to raise the question upon which the judgment was rendered and the case is to be decided in this court; and that ques-tion is whether the lien of the plaintiff upon the shingles for his work and labor shall have preference of and be par-amount to the right of the purchaser in such a case; or, in other words, whether in view of secs. 3329–3331, R. S., and the amendments thereto of 1880, 1881, and 1882, the lien of the laborer so attaches to the logs, timber, or lumber upon which he has performed labor and service, from the time such labor is performed, as to supersede the claim of a sub-sequent *bona fide* purchaser thereof for value before the filing of the claim for such lien, and having no notice or knowledge of such lien, express, implied, or constructive.

The solution of this question depends wholly upon the construction of our statute.   It is a new question in this court.   It was not involved in *Dobbs v. Enearl*, 4 Wis. 451,

although the language in respect to the lien *not remaining* or continuing unless the claim is filed within the time prescribed in sec. 4, ch. 120, R. S. 1849, that "no such debt for work and materials *shall remain* a lien upon such lands, houses, or other buildings longer than one year," etc., "unless a petition or claim for the same be filed," etc., is the same as in sec. 3331, R. S., as amended, which is that "no debt or demand for such labor or service *shall remain* such lien unless a claim therefor in writing shall be made," etc. In the above case it is said: "The lien is *created* by the filing of the petition." It was not necessary to the case to have said this. The claimant had died, and an administrator had filed the lien within the year. The time had not expired for filing the claim or petition. Then why did not such filing create the lien? It is answered by the real decision: "No action lies to enforce a lien in behalf of a mechanic or material-man unless the petition for the lien is filed *during the life-time* of the intestate or testator." That case, therefore, is not authority for holding that the mechanic in any case, or the laborer in this, has no lien until he files his claim. It is authority only that the lien does not survive the death of the mechanic or material-man unless fixed and determined by the filing of the claim or petition for it in his life-time. It is a personal privilege which he has the option to insist upon or waive.

The language of the above case was disapproved by this court as being "very strong,— stronger than the exigencies of the case seemed to require,"— in *Hall v. Hinckley*, 32 Wis. 362. But in that case the court gave to the filing of the claim sufficient virtue and effect to give it preference over a prior lien, the claim for which had not been filed. There is in the opinion in that case the following not over-cautious language: "A careful examination has satisfied us of the correctness of the view thus early taken [in *Dobbs v. Green*, 2 Wis. 228, and *Dobbs v. Enearl*, *supra*] of the

statute, and that it should be sustained." The principle recognized in that case, that as to different mechanics' liens on buildings the lien first fixed by the filing of the claim and obtaining judgment thereon should be preferred to prior liens the claims for which had not been filed, or that the filing of the claim *creates* the lien, was evidently intended to be restricted to such a case, and not to be extended to mortgage claims, judgments, or even the claims of purchasers which originated subsequent to the commencement of the building, although the distinction is not very clear.

In *Rees v. Ludington*, 13 Wis. 276, it is incidentally said, although not necessary to the decision of the case, that " the design was to give the mechanic a lien from the commencement of the building, equal in power and effect with the lien of another creditor who had obtained and docketed a judgment."

In *Chapman v. Wadleigh*, 33 Wis. 267, prior effect of the mechanic's lien is given over mortgages originating subsequent to the commencement of the building; and to the same effect is *Lampson v. Bowen*, 41 Wis. 484. In *Hewett v. Currier*, 63 Wis. 386, the mechanic's lien is given preference over a purchaser subsequent to the commencement of the building. This principle may be considered the settled law of this state under the present mechanic's lien statute. The statute itself is clear and explicit as to the priority of the lien, and the date is fixed as " the commencement of the building." There can be no injustice to one whose claim originates after this open and notorious event occurs. " The commencement of the building " is as ample notice of the lien and claim of the mechanic to a subsequent purchaser or mortgagee as open, visible, and notorious possession could be of the title under it.

In *Paine v. Woodworth*, 15 Wis. 298, the lien of a person performing labor upon timber or lumber, given in sec. 12,

ch. 153, R. S. 1858, was enforced as against a person holding a contract for the delivery of the logs to him as security for money advanced prior to the performance of the work and labor on them, on the principle that the labor was done for his benefit as much as for the benefit of the owner, and "for the benefit of everybody who had any interest in the property;" and such a case was likened to a sailor's lien for wages. "It follows the ship and its proceeds into whose hands soever they may come *by title* or *purchase from the owner.*" That may be true of a sailor's lien for wages, but that remark was not applicable to the case. There was no title or purchase from the owner *subsequent* to the laborer's lien on the logs in the case. The claim was in the nature of the prior ownership of the logs. The case under consideration and the case of a seaman's lien upon the ship were the same in principle, however, in one most important respect. The person holding such a prior interest in the property has notice of the subsequent labor upon it to enhance its value, and the labor is for his benefit, and he is privy to the contract, express or implied. As to the seaman's lien for wages on the ship and proceeds, everybody has ample notice. The seamen are with and on the ship. They are inseparable until the seamen are paid and discharged. The seamen of previous voyages retain no lien after they have abandoned or left the service of that particular ship. A purchaser of the ship can readily inquire whether the seamen have been paid. He purchases with notice.

It is evident that the question in this case has been presented to this court for the first time, and it is not without difficulty. The language of sec. 3329, R. S., in respect to such a lien, is, "which shall take precedence of all other claims or liens thereon." The natural interpretation of this language would seem to be, "all other *existing* claims or liens thereon." *Jessup v. Stone*, 13 Wis. 467. But, however that may be, it is certainly not broad or specific enough

to embrace the claim of a subsequent *bona fide* purchaser for value, in the usual course of trade, without notice. The language would have to be forced beyond its natural meaning to embrace such a case; and we do not think that the legislature intended such a meaning, for it has omitted to use the language to express it as against the well-known policy of the law governing the transfer of personal property, for the protection of *bona fide* purchasers in an open market for value without notice of prior claims thereon. This cardinal principle is as well expressed by Mr. Justice Lyon, in *Andrews v. Jenkins*, 39 Wis. 476, as anywhere else: "It is too well settled to admit of argument or doubt that if the general owner of personal property, having possession thereof, sell and deliver to a person who has no notice, actual or constructive, that the property is incumbered, but who purchases it in good faith for value, such purchaser will hold the property discharged of any prior incumbrance. The defendants purchased the logs in controversy in the market, and paid for them the market price, without notice, either actual or constructive, that Andrews had or claimed any lien upon or interest in them."

The paramount importance and incalculable value of personal property in these modern times makes its ready and easy transfer from hand to hand, and the protection of *bona fide* purchasers thereof, absolutely essential to our modern systems of trade and commerce. Secret trusts, liens, and incumbrances, and unknown and concealed claims and interests, in and upon personal property, and especially that kind of personal property that enters so largely into the general commerce of a country, would, if enforced by law, work the greatest injustice and be utterly destructive of the greatest financial interest that any country can have. As said in *Webb v. Sharp*, 13 Wall. 14, in respect to the claim of a subsequent purchaser without notice of the landlord's lien: "Goods sold in the ordinary course of trade undoubt-

edly become discharged from the lien. Otherwise *business could not be safely carried on.*" The same ruling in *Fowler v. Rapley*, 15 Wall. 328, and *Beall v. White*, 94 U. S. 386. Logs, timber, lumber, including boards, shingle, and lath, constitute most valuable and important articles of our trade and commerce, and are readily and necessarily and almost constantly being transferred and .sold in wholesale and retail in open market, and carried and scattered over vast distances by land and water. This interest and trade are too vast and important to be clogged, impeded, and incumbered by secret liens, following them into all the distant markets of the land, to be enforced in violation of such a cardinal principal to facilitate and protect the sale of personal property.

In view of these considerations and authorities, what· is the true interpretation of our statutes giving to laborers thereon a lien upon logs, timber, and lumber? What is the object or purpose of filing a claim for such lien in the office of the clerk of the circuit court of the county unless it be for *notice* to somebody? In sec. 3341, R. S., it is called "the *notice* of such lien." This constructive notice would in most cases be the only notice a subsequent purchaser would be likely to have. If he has actual notice, or knowledge of such facts and circumstances as to imply it or to put him on inquiry of such liens, then he is not an innocent or *bona fide* purchaser as against them, and should not be protected, and will not be by a reasonable construction of the statute. The laborer, while he is working upon the logs, timber, or lumber, is protected by the notice inherent in this very act in connection with the article itself, equivalent to possession of it, as in common-law liens. After he has completed his labor upon it, he can at once file his claim and his protection will continue. It is not necessary that he should delay his remedy until the article has been removed and gone into the markets of the country and· into the hands of many

subsequent purchasers for value and in good faith without any notice whatever of his claim. The proper meaning of the statute would seem to be that the laborer has a statutory lien for the value of his labor upon the logs or lumber from the time of its commencement. But it is a lien that he must claim in the way provided for, or he will be held to have waived it. He has a lien, no doubt, against all the world having actual or constructive notice of it. This would be consistent with the language: "No debt or demand for such labor or services *shall remain such lien* unless a claim therefor in writing shall be made," etc. This language is the only argument that the lien so attaches from the time of the labor or service as against subsequent purchasers without notice. In all other cases where the statute does not thus recognize the lien before filing the claim, the decisions are uniform, and it is admitted that such lien does not exist until the filing of the claim or petition. *Kruse v. Thompson*, 26 Minn. 424; *Payne v. Wilson*, 74 N. Y. 348. If this peculiar language of our statute can have force without violating the great principle and clear public policy of the law that protects *bona fide* purchasers in the usual course of trade for value without notice of the lien, then such should be its construction. If one purchase, before the filing of the claim, with notice that a certain person has worked upon the article to produce it and the time has not expired for the filing of his claim, it would seem proper that he should take notice of such a laborer's lien upon it. Or if he had been informed that a lien existed, or had such knowledge as to put him on inquiry of it and be bound to so inquire, he could scarcely be called a *bona fide* purchaser without notice. In this way the laborer can have ample protection of his lien without any infraction of, or violent exception to, the general law which protects subsequent *bona fide* purchasers without notice. Until the legislature has seen fit to declare in explicit language that the

laborer in such cases shall have a lien paramount to the claim of such purchasers, upon a full consideration of the gravity of such an innovation upon the general law of the land made to facilitate and protect *bona fide* sales of personal property in the open market for value and without notice of such a secret lien upon it, we think this should be the interpretation of the statute.

The supreme court of Michigan, under precisely the same statute as ours in this respect, held in *AuSable River Boom Co. v. Sanborn*, 36 Mich. 358, and subsequently in *Haifley v. Haynes*, 37 Mich. 538, that such a lien, until the claim therefor had been filed, did not exist as against a subsequent purchaser of the logs in good faith and without notice. I should have done better to have quoted the reasons given in these cases for so holding than to have attempted originality, and may be permitted to quote briefly therefrom in addition to what has already been quite tediously expressed. That court said: "It is plain that justice and policy, as well as precedent, require a rigid construction of this statute, to hinder its operation, so far as may be, against valuable rights, and especially where a contrary view would imperil the rights and interests of innocent third parties."

It may be proper to say that since these decisions the legislature of that state has amended the statute by an express proviso that any sale or transfer of the logs, timber, etc., during the time limited for the filing of such statement of lien, and previous to the filing thereof, shall in no way affect such lien. Whether this is a safe and judicious precedent to be followed in this state is with our own legislature. The laborer's lien should, of course, be protected as far as possible without inflicting too much loss and damage upon interests paramount by reason of their magnitude and their general bearing upon the trade and commerce of the country. It is to be presumed that he does not seek protection which would result in wrong and injustice to other

equally innocent parties. But we do not presume to express an opinion as to what the legislature ought to do, for it is not our province to do so. We can only construe the statute as it exists, and we think the above interpretation preserves the true meaning of the language as it expresses the intention of the legislature, and that such an interpretation will work no injustice to the laborer or the purchaser.

This being our view, it follows that, under the stipulation of the parties and the finding of the court, judgment should have been rendered in favor of the appellant, the *Shell Lake Lumber Company.*

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to render judgment in favor of the *Shell Lake Lumber Company.*

TAYLOR, J. The respondent brought his action against his debtor, Eugene Smith, under the provisions of R. S. sec. 3329 *et seq.*, as amended by ch. 319, Laws of 1882, claiming a lien for his labor in the manufacture of certain designated shingles. He made the appellant, the *Shell Lake Lumber Company*, a codefendant, on the ground that said company claimed some right to or claim upon said shingles.

There is no dispute, upon this appeal, as to the amount due from Eugene Smith to the plaintiff and respondent; nor that such sum was due for work and labor performed by the respondent in the manufacture of the shingles described in the complaint; nor is there any claim that the plaintiff has not in all things complied with the law to entitle him to a judgment for a lien upon said shingles if, upon the facts proven and admitted on the trial, the statute gives him such lien as against the claim of the appellant. On the trial it was admitted by the appellant that the plaintiff had, between the 21st day of May, 1883, and the 23d day of March, 1884, performed work and labor for the defendant Eugene Smith in helping to manufacture the shin-

gles in question and other shingles; that on the 23d day of
March, 1884, when the plaintiff quit work on such shingles,
there was due from Eugene Smith to him for such work
and labor the sum of $609.45; and that a settlement was
had with Eugene Smith on the 2d' of April, 1884, by which
it was found that there was still due and unpaid to the
plaintiff, for his said labor and service, the said sum of
$609.45, upon which sum said Eugene Smith agreed to pay
interest from that date at the rate of eight per cent. per
annum.   It was also admitted that the plaintiff duly filed
his claim for a lien on said shingles, in the proper county,
on the 5th day of April, 1884, and the complaint in this
action was verified on the 9th day of April, 1884, and the
summons was served on the 11th day of April, 1884.

The only defense to the action set up in the answer of
the appellant, and relied upon in this court, is that the ap-
pellant was a *bona fide* purchaser of the shingles without
notice of the plaintiff's claim to have a lien thereon.

Upon this subject the learned circuit court found as a
fact as follows: "(7) That all the shingles mentioned in
the complaint were sold in the usual course of trade by the
defendant Eugene Smith to David Joyce and the *Shell Lake
Lumber Company*, part being sold to one and part to the
other, and that the same were so sold to the said Joyce and
the said defendant the *Shell Lake Lumber Company*, and
were by them purchased in the due course of trade, before
the filing of the plaintiff's claim for a lien, and without any
knowledge of the plaintiff's claim, and that all the payments
were made to the said Eugene Smith, or' on his order, to
or for the purposes hereinbefore set forth, and before the
said purchasers had any notice or knowledge whatever of
the plaintiff's claim or of the defendant Smith's indebted-
ness to the plaintiff; and that all said shingles were deliv-
ered on the premises of the *Shell Lake Lumber Company*
before the defendant the *Shell Lake Lumber Company* or

David Joyce knew of the existence of defendant Smith's debt to plaintiff." It will be seen by this finding that the precise time when the shingles were purchased is not stated, nor is it stated in the admissions and stipulations of the parties or in the previous findings of the court; but the sixth finding of fact clearly indicates that the sale must have been perfected as early as the 18th of March, 1884.

The sixth finding shows that, while Eugene Smith was engaged in manufacturing the shingles in question, the appellant furnished Smith a large amount of supplies, which were used by him in the manufacture of said shingles, consisting of groceries, provisions, and other necessaries, and in boarding and paying the men engaged in the manufacture of said shingles. The amount or value of such supplies is not stated or found by the court. This finding does, however, state that on the 18th of March, 1884, the appellant advanced and paid to the order of Smith $1,961.43; that this sum was paid and advanced to Smith on his orders in favor of the men who composed the night crew, who had been engaged in manufacturing said shingles; that these advances and payments were all made before the filing of the plaintiff's lien in this case, viz., April 5, 1884. This finding further states that all the men engaged in manufacturing said shingles were not paid by said "*Shell Lake Lumber Company* or by the said Smith, and that the plaintiff was one of the men who was not so paid." The answer of the appellant does not show the exact date of its alleged purchase, except that it was made before the 5th of April, 1884, the day plaintiff filed his claim.

From these findings, the admissions of the parties, and the answer of the appellant, it is quite apparent the purchase made by the appellant must have been completed by the payment on the 18th of March, 1884, as it does not appear that any payments were made after that date. The purchase was consequently made while the plaintiff was

still engaged in the manufacture of shingles for the said Eugene Smith. We think it must be inferred, from the facts found and the answer of appellant, that the sale must have been completed on the day the last payment was made by the appellant, viz., the 18th of March, 1884.

The act in force when the work in this case was performed, is ch. 319, Laws of 1882. Sec. 1 of this act amends sec. 3329, R. S. 1878, so as to read as follows, viz.: "Any person who shall do or perform any labor or services in cutting, felling, hauling, measuring, driving, rafting, booming, cribbing, towing, *sawing*, or *manufacturing into lumber* any logs or timber, in any of the counties in this state, shall have a lien upon such logs, timber, or lumber for the amount due or to become due for such labor or services, *which shall take precedence of all other claims or liens thereon*," etc. Sec. 2 amends sec. 3331, R. S. 1878, so as to read as follows: "No debt or demand for such labor or service *shall remain such lien*, unless a claim therefor in writing shall be made and signed by the claimant or his attorney, and verified by the claimant or some one in his behalf, in the same manner that pleadings in civil actions may be verified, setting forth the nature of the debt or demand for which the lien is claimed, the amount claimed to be due, and a description of the logs, timber, lumber, cord-wood, etc., against which the lien is claimed, and that the claimant claims a lien thereon pursuant to this chapter and the chapter to which this is amendatory." The remainder of the section prescribes where the claim for lien shall be filed, and the time within which it must be filed. The time for filing the lien when the work is done between November 1st and the 1st of May following is on or before the 1st of June, and in other cases within thirty days after the work and labor are completed. Sec. 3332 of the Revised Statutes of 1878, which was not amended by said ch. 319, Laws of 1882, provides that "such lien claim shall cease to be a lien on the prop-

erty named in such petition or statement unless action be commenced within four months after filing such petition or statement."

It is claimed by the learned counsel for the appellant that the lien of the laborer is subject to the claim of a *bona fide* purchaser of the logs, timber, lumber, etc., from the person owning such logs, etc., and who employs the laborers to get out such logs and timber, or to manufacture such logs and timber into lumber. To my mind this claim is in direct conflict with what was intended by the legislation creating the lien in favor of the laborer, as well as inconsistent with the very nature of a lien. There can be no doubt as to the object of the legislature in regard to laborers' liens. It was clearly to give the laborer a certain fixed claim upon the personal property produced or enhanced in value by his labor, and to secure to him a prompt and easy method of compelling payment for such labor. The nature of a lien at common law necessarily excluded all claims of those claiming under the owner after the lien attached. The common law gave the lien to the mechanic, artisan, or others, for the value of work done and materials furnished in the repair or construction of some article belonging to another, and could only be enforced in favor of one having the actual possession of such article. It would be a superfluous work to cite authorities to show that the person having a lien upon personal property at common law could not be divested of such lien by the owner by any act of his, so long as the claimant retained the possession of the article upon which the lien existed. When the statute gives a lien for labor done upon an article, of which he has not, and in the nature of his employment cannot have, the possession required at common law, the clear inference, without express words, is that the lien shall have the same force without possession as it had at common law with possession, and consequently no act of the owner subsequent to the

date at which the lien attaches can divest such lien. If the laborer has an acknowledged claim or lien upon the property, no act of the owner can divest it.. If the lien can be divested without the consent of the claimant by the single will of the owner, then there is wanting the very essence of a lien. That a statutory lien is to be construed as of the same nature and efficacy without actual possession as the common-law lien with possession, seems to be well settled by all the authorities.

In *Beall v. White*, 94 U. S. 386, the court say: " Statutory liens have, without possession, the same operation and efficacy that existed in common-law liens where the possession was delivered."

" The office of a lien is not to create an estate, nor in the slightest degree to affect or interfere with prior incumbrances, but to prevent subsequent alienations or incumbrances to defeat a just demand." Houck, Liens, secs. 141, 142. What is said in this extract about a lien affecting prior incumbrances is probably not applicable to the claimant for a lien upon personal property.

In the case of *Grant v. Whitwell*, 9 Iowa, 156, 157, after speaking of the nature of a lien by judgment upon real estate, and showing that no alienation by the owner after the lien of the judgment attached could defeat such lien, the court say: " The same idea holds good of a mechanic's lien. He has it from the time of furnishing the work or materials, or putting them in the building. It rests upon the house and holds it so that it cannot be divested; but to enforce it and have the subject of it applied to his payment he brings his action. His lien is not then created, but it is judicially ascertained and declared, or, as it is termed, established. It existed before and rested upon the premises subject to his claim, and by the judgment is applied to his benefit. This is the notion of a lien, and it is only through such idea of it that it can hold property against other

claims accruing subsequently. . . . The same virtue exists in these statutory liens in which possession does not pass, that existed in those at common law when they were accompanied by possession."

In *Taggard v. Buckmore*, 42 Me. 81, it is said the lien referred to in the statute cannot be a general lien; the language forbids such construction; but in its character it is the same as a particular lien at common law. "The principle embraced in the statute is founded in natural justice, that the party who has enhanced the value of the property by incorporating therein his labor or materials shall have security on the same, though changed in form, and inseparable from the property." This was said of a lien for labor or materials furnished in the construction of a vessel.

The foregoing is sufficient to show the nature of a lien, and that the idea of lien excludes the idea that it can be divested, so long as it exists according to law, by any act of the general owner not assented to by the lien claimant.

As to the extent of the lien given by the statute above quoted to the laborer, there seems to me no room for doubt. The statute giving the lien declares that "it shall take precedence of all other claims or liens thereon." It seems to me that no more general words could have been used to exclude the idea that such lien should be subject to the claim of any subsequent purchaser who became such at any time before the claimant's right to enforce his lien had expired under the subsequent provisions of the act.

That the lien must date from the time of the commencement of the work, and not from the date of its completion, or from the date of the filing of the claim for a lien, is also very clear. The second section of ch. 319, Laws of 1882, says that no debt or demand for such labor shall *remain such lien*, unless a claim therefor be filed within the time prescribed in said section. The lien referred to in this section is the one mentioned in the first section of said chap-

ter, which it is declared shall take precedence of all other claims and liens. The regulation in this second section for giving the notice, when the labor is performed between the 1st of November and the 1st of May following, clearly indicates that the claim, when filed as prescribed, shall make all the labor between those dates a lien if it has not been paid for. The lien must date from the time of the commencement of the labor performed, and covers all the work done between the stated periods, or at the time the work is completed, or when the claim is filed. It is clear from the language of the statute that the filing of the claim is not the date of the lien, as such construction is in conflict with the language used; and if it only attaches when the work is ended the statute would furnish no security at all for the labor performed, and might better be repealed. In the case of a mechanic's lien this court has repeatedly held that the lien of the workman or material-man dates from the commencement of the building, or of the repairs when the lien is for repairs, and takes precedence of all subsequent liens. *Redmon v. Phœnix F. Ins. Co.* 51 Wis. 302; *Lampson v. Bowen*, 41 Wis. 484; *Hewett v. Currier*, 63 Wis. 386; *Hall v. Hinckley*, 32 Wis. 365; *Bryant v. Small*, 35 Wis. 208, 209; *McCoy v. Quick*, 30 Wis. 521; *Willer v. Bergenthal*, 50 Wis. 474. And it seems to me that a like rule should be applied to the lien of the laborer on logs or lumber, and that his lien attaches at the time he commences work.

This court has always construed these statutes giving liens to laborers liberally, to effectuate the clear purpose of the legislation, viz., to secure the laborer pay for his wages out of the property which his labor has created or enhanced in value, which purpose the supreme court of Maine says is in accordance with natural justice. This court may not, perhaps, have expressly passed upon the question of the relative rights of the lien claimant and purchasers of the property upon which his work has been performed subse-

quent to the performance of such work, but it has passed upon the question as to his right as against a person claiming by a prior title or lien, and has held in favor of the laborer's lien as against such claimants by prior title or lien.

In *Paine v. Gill*, 13 Wis. 561, this court said: "We have no doubt that it was the intention of the legislature to make this lien prior and superior to existing liens upon this kind of property. It is analogous in principle and reason to the case of repairs and improvements on personal property, when the law gives a lien upon the thing itself in favor of the mechanic or person who has laid out his labor or money in such improvements."

In *Paine v. Woodworth*, 15 Wis. 303, 304, it was again said: "The whole merits of the controversy depend upon the question whether, when a party has contracted with another party for the delivery of a lot of logs at a particular place, and for a prior lien on those logs as a security for a debt, such lien so contracted for cuts off the lien which the law gives the workman who performed the very work on the logs necessary to a fulfilment of the first contract. As we said before, we think it does not; but that it was the intention of the statute to give such workmen an absolute lien, when they were employed to do the work by any one having competent authority, as against everybody, upon the principle that the labor enhanced the value for the benefit of everybody who had any interest in the property."

In both the cases above cited the person for whom the claimant did the work in running the logs had sold the logs and received his pay therefor in full before the work was done, but before the logs were delivered under the contract, and under an agreement that the person to whom the logs were sold should have a lien on the logs for all moneys advanced on them before delivery. This case, it seems to me, presents full as great equities on the part of the prior purchaser as there can be in favor of a subsequent one. In

Smith vs. The Shell Lake Lumber Co., imp.

these cases the claim was not filed, nor the action to enforce the lien commenced, until after the logs had been paid for by and delivered to the purchaser. The circumstances of the purchasing claimant were similar to those in the case at bar. He furnished the supplies and money to get out and deliver the logs as a part of the purchase money, the same as the appellant did in the case at bar. The law under which these cases were decided was sec. 12, ch. 153, R. S. 1858, which only gives the lien in the following general terms: "Any person or persons performing manual labor upon any land, timber, or lumber, for or on account of the owner, agent, or assignee thereof, may avail themselves of the foregoing provisions of this chapter, and upon complying with the requirements thereof shall have a like lien for the amount of work and labor performed, and the said lien may be carried into force and effect pursuant to the foregoing provisions of this chapter." The chapter relates to the mechanic's lien for the construction of houses, etc.

It seems to me very clear that the lien given by the said section cannot be said to be more absolute or far reaching than the lien given by ch. 319, Laws of 1882. A like decision was made by the supreme court of Maine in *Spofford v. True*, 33 Me. 284. In this case it was held that the laborer's lien upon logs took preference of the lien of the former owner of the lands from which the timber was cut, and who had conveyed it to the person employing the laborer, without receiving his pay therefor, and with a reservation of a lien of five dollars per M. feet on all timber cut therefrom by his grantee, he being authorized to cut and remove the timber subject to such lien. In deciding this case the court say: "This laborer's lien takes away none of the rights of the owner, nor the one interested therein, by lien or otherwise, any further than is necessary for the security of those who are presumed to have added something to its value, equal to the expense, at least, incurred."

The statute of Maine gives the lien in general terms, without expressly declaring that such lien shall take precedence of any other claims or liens.

On the question whether, when a statutory lien has attached and the lien claimant has pursued the course pointed out by the statute to enforce such lien within the time prescribed by law, his lien can be destroyed by any subsequent act of the person owning or having the lawful possession of the property upon which the lien attaches, by a sale or incumbrance thereof, it seems to me must be answered in the negative upon all considerations. *First*, the act itself, as I understand it, expressly negatives the power of the owner or possessor to defeat the laborer's lien after it attached, without his consent, in any and all cases; *second*, if the object of the act is considered, that negatives such power. If the power be granted, then the main object of the legislature is destroyed, and it is especially likely to defeat the object of the statute in all cases where the laborer most needs its protection, viz., in those cases where his employer is impecunious, dishonest, or neglectful of his business. Such employers are the ones most likely to make sales of the materials produced by the labor of their employees, without regard to the question of whether their wages are paid or not. When the laborer has an honest or responsible employer there is generally little need of the protection of the statute.

The great preponderance of the authorities is that a lien which has attached cannot be destroyed by any subsequent act of the owner or employer not assented to by the lien claimant, and the same preponderance of the authorities hold that the lien is equally as effective against a *bona fide* purchaser or incumbrancer as against any other person. As stated above, the very idea of a lien excludes the idea that it can be divested by the owner without the assent of the lien claimant.

In *Dunklee v. Crane*, 103 Mass. 470, the court say: "The statute contains no express provision that the lien shall attach and have a priority over mortgages and other incumbrances created after the contract, but such is the necessary implication. . . . The nature of the security intended to be created by the statute necessarily tends to this result. Any other construction would defeat the manifest purpose of the legislature to give to those who, by virtue of contracts with the owner, have by their labor and materials increased the value of his property, an interest in it until the debts due them for such labor and materials are paid."

In *Edwards v. Derrickson*, 28 N. J. Law, 39, 49, the judge delivering the opinion says: "The objection would be well taken if the builder and owner can destroy the lien contemplated by the act by selling or encumbering the property after the work is done and the materials are furnished, but before the claim is filed. Can he do this? I will not discuss this question, as it has not been raised, and to admit it is to consider the law itself to be powerless nonsense."

In *Vandyne's Ex'rs v. Vanness*, 5 N. J. Eq. 485, it was held that the lien should be preferred to a mortgagee who had taken his mortgage after all the work was done, and before the claim was filed, the mortgagee being entirely ignorant of the claim of the person having the lien.

Houck, in his work on Liens (p. 146), says: "A subsequent transfer of the property ought and does not affect the lien after work has been actually begun." The same was said by this court in *Hall v. Hinckley*, 32 Wis. 365. See cases cited above from this court. See, also, *Lampson v. Bowen*, 41 Wis. 484; *Brooks v. Railway Co.* 101 U. S. 443; *Welch v. Porter*, 63 Ala. 232.

In *Leisherness v. Berry*, 38 Me. 80, it was held that a person performing labor upon logs had precedence of a person buying the same of the owner after the laborer had commenced his work. In that case the court say: "The de-

fendant attempted to establish title in himself from Lary through one Atkinson; and, if such attempt had been successful, it is difficult to perceive how it could have affected the rights of the plaintiff, whose interest was superior to that of Lary, and more especially if the plaintiff had no knowledge of, and gave no consent to, the transaction." The plaintiff had performed the work on the logs for Lary.

In *Sheridan v. Ireland*, 66 Me. 65, it was held that a laborer who had helped cut and haul the logs in the winter might enforce his lien against one who had purchased the logs after they had been run in the spring to a boom where they had been sold. The law in Maine simply gives a lien to the laborer to continue for sixty days after the logs or lumber arrives at the place of destination for sale or manufacture.

In *Doane v. Garretson*, 24 Iowa, 351, it was held that the landlord's lien upon a stock of goods of his tenant had preference to the right of a mortgagee of the tenant, who had taken possession under his mortgage for condition broken. See, also, *Grant v. Whitwell*, 9 Iowa, 152. In this case the landlord was allowed to enforce his lien against a creditor who had attached and sold the property of the tenant, and it was held that the lien attached as the rent accrued and not from the time of the commencement of the proceedings to enforce it.

In *Beall v. White*, 94 U. S. 382, the supreme court of the United States held that the landlord's lien, under the laws of the District of Columbia, took precedence of a trust deed given for the benefit of a creditor of the tenant.

The only qualification made by the courts of Iowa and of the United States in regard to these landlord liens, is that when the landlord leases the premises to a party to be used for trade as a merchant there is an implied agreement that he may sell goods in the usual course of his business to his customers, and that as to such goods, when removed

from the leased premises, the lien does not attach. This is a reasonable presumption, but it has no application to the business of getting out logs or timber or manufacturing the same. It might have some application if the manufacturer was a retail dealer in the lumber manufactured, as well as a manufacturer. This fact being known to his laborers, there might arise a presumption that the lien for their wages should not attach to the articles sold at retail to ordinary customers.

The only case found which has any direct bearing in favor of the idea that the lien of the laborer for work performed in getting out timber or logs or in manufacturing the same into lumber is subordinate to the claim of a subsequent purchaser without actual notice of such lien, is the case of *Haifley v. Haynes*, 37 Mich. 535. While I have great respect for the learning and ability of that court generally, it seems to me that in this case, by their own admissions, they undertook a little judicial legislation to avoid, as they imagined, very grave evils which would arise if the statute were construed as it was clearly intended that it should be by the legislature. The legislature of Michigan did not appreciate the imaginary dangers anticipated by the learned judges, and at the very first opportunity amended the act so that thereafter the learned judges could not mistake its meaning, by adding a proviso to the third section of the act, which reads as follows: "Provided, that any sale or transfer of the logs or timber or staves upon which the lien is claimed, during the time limited for filing such statement or petition and previous to the filing thereof, shall in no way affect such lien; but such lien shall remain and be enforced against such logs, timber, and staves in whosesoever possession the same shall be found." See No. 3, Laws of Mich. 1879. This amendment still remains the law of Michigan (see sec. 8415, Gen. Stats. Mich.), and its provisions have been extended so as to include shingles,

railroad ties, telegraph poles, cedar posts, and tan bark; and yet it has not yet become a matter of public notoriety that the business interests of the people of Michigan have suffered by legislation "so replete with danger" in the opinion of the learned judges of that state.

To me it is clear that the legislature, in their practical wisdom, have seen fit to prefer the rights of the laborer to the rights of the purchasers, *bona fide* or otherwise, of certain kinds of property, to the extent of securing such laborers payment for their labor expended upon such property; and I do not feel called upon to override that policy by any strained construction to protect such purchasers, on account of any imaginary evil which may be thought likely to result therefrom. If the evils of such a law are greater than its benefits, the legislature will be prompt to ascertain that fact, and, when necessary for the general good, correct the evil.

I think the judgment of the circuit court should be affirmed.