ELIJAH C. FINNEY

*v.*

GEORGE F. HARDING.

*Filed at Springfield March 30, 1891.*

1. LANDLORD'S LIEN—*purchaser from tenant—liability of purchaser.—remedy of landlord.* A *bona fide* purchaser of grain from a tenant, without notice of the landlord's lien thereon for unpaid rent, or of facts sufficient to put him on inquiry, will not be liable to the landlord for its value in a personal action, but the landlord may still levy his distress warrant on the grain, if it can be found and identified.

2. A party engaged in the business of buying and selling grain in this State, in August and December bought, in the regular course of business, oats and corn of a tenant, amounting to $227, which was paid for at the time. The purchase was in the ordinary course of business, without any notice that the vendor was a tenant or that the grain was raised upon rented premises, and there were no facts or circumstances shown to put the purchaser on inquiry. The tenant being indebted for the rent, his landlord sued the purchaser personally for the value of the grain, and it was stipulated that any proof showing a right of recovery in any form of action should be admitted: *Held,* that the plaintiff could not maintain the action.

3. A landlord, merely by virtue of his lien on the crops of his tenant, without the levy of a distress warrant, has no right to the possession of such crops, either before or after the rent is due. His remedy for a fraudulent act intended to impair the security given by his lien is an action on the case.

4. A landlord's lien is like that of an execution, which gives the officer no right in the property itself, and it will not enable him to maintain replevin, trover or trespass prior to the levy of his distress warrant.

5. The lien given by the statute to a landlord upon the crops grown, for the rent, will authorize him, by the issue of his warrant, to follow the crops when sold by the tenant, and seize the same wherever found, so long as they can be identified, the same as a sheriff having an execution may follow the property subject to the lien of his execution.

6. If a tenant, without the consent of his landlord, shall sell and remove, or permit to be removed, or be about to permit to be removed, from the demised premises, such part of the crops raised thereon as shall endanger the lien, the landlord may distrain before the rent is due. This furnishes the landlord a means of protecting his lien, and securing himself against loss by the sale and removal of the crop.

7. PURCHASER SUBJECT TO LIEN—*liability to lienholder—remedy.* A purchaser from a judgment debtor of personal property subject to the lien of an execution, if made for value, without knowledge of the lien or any fraudulent purpose, will not be liable, in an action by the plaintiff in the execution, for the value of the property.

8. The principle upon which a purchaser for value may be charged, rests solely upon the ground of fraud. So if a person, knowing of a judgment and execution, purchases of the debtor with the view and purpose to defeat the creditor's execution, it is fraudulent, notwithstanding he may have given a full price for it, and he may be held liable to the creditor for the injury thereby done.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Douglas county; the Hon. C. B. SMITH, Judge, presiding.

The following statement of facts, taken from the opinion of the Appellate Court, will be sufficient to present the single point arising on this record:

"Appellee, a resident of Chicago, made a lease, in writing, to Matthias Klien, of a quarter-section of land in Douglas county, for one year, from March 1, 1886, at a cash rent of $480, payable on or before the first day of January next following, and providing, among other things, that the crops should not be removed until the rent was paid. In August and December, 1886, appellant, for his firm, which then was

and for some years had been engaged in the business of buying and shipping grain at Tuscola, about three miles from the demised premises, purchased of the tenant oats and corn raised on said premises, of the value of $227.16, and paid him therefor in good faith, and without any notice that he was a tenant, or that the grain had been raised on demised premises, or that any rent was unpaid. About the first of January, 1887, Klien left the farm and the county, wholly insolvent, and with $380 of the rent unpaid. Appellee brought this suit to the October term, 1887, in assumpsit, on the common counts, and a special count setting out the facts, to which the defendant pleaded the general issue, which was tried by the court, without a jury, under a stipulation that the form of action might be disregarded and any legal claim or defense shown. Judgment was given for the plaintiff for $227.16."

Messrs. ECKHART & MOORE, for the appellant:

In giving the landlord a lien on the crops, the legislature did not intend to vest in him the title to the crops, because the lien is discharged by payment of the rent. The ownership of the crop resides in the tenant.

A lien is a right to resort to the thing on which it operates —a right of retaining property until a debt due to the person retaining it has been satisfied. 2 Benjamin on Sales, 1181; *Bruner* v. *Dyball,* 42 Ill. 37.

At common law the landlord had no lien for rent upon his tenant's goods, but the right to distrain the goods found upon the leased premises. 1 Jones on Liens, 306.

As to the decisions of this court relating to the lien, see *Miles* v. *James,* 36 Ill. 399; *Thompson* v. *Mead,* 67 id. 395; *Watt* v. *Scofield,* 76 id. 261; *Prettyman* v. *Unland,* 77 id. 206; *Hunter* v. *Whitfield,* 89 id. 229.

Mr. WILLIAM J. AMMEN, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The single point for decision is stated by counsel for the appellant to be, "whether a *bona fide* purchaser, without notice, of crops grown on rented premises, for a valuable consideration, is protected in law;" and as stated by counsel for the appellee, "does the statutory lien of the landlord on the crops hold against the purchaser of the crop from the tenant who purchases within the six months named by the statute, but whose purchase, however, is in good faith, for value, without actual notice of the existence of the facts contemplated by the provisions of the statute" creating the lien. By stipulation a jury was waived, and under the declaration and plea of general issue filed, proof was admissible that would sustain the plaintiff's right of recovery in any form of action, or maintain any defense available. Propositions of law were asked and refused, properly raising the question stated.

The question is, therefore, broadly presented, whether a right of action is shown in the plaintiff, irrespective of the form of action. The plaintiff is not seeking in this action to enforce his lien upon the crops grown upon the demised premises, but to charge the defendant, as purchaser thereof, in a personal action, for their value.

Appellant was engaged in the business of buying and selling grain at Tuscola, and in August and December, Klien, the tenant of appellee, sold to appellant oats and corn, in the regular course of business, amounting to $227.16, which was paid for at the time. The suit was brought in October, 1887. It is conceded that the grain was purchased in the ordinary way, without notice by appellant of Klien's relation to appellee, or that the grain was raised upon rented premises, nor are there any facts and circumstances shown, which, it is claimed, would put appellant upon inquiry, or which, if followed, would lead to the fact.

The 31st section of the Landlord and Tenant act is as follows: "Every landlord shall have a lien upon the crops grown or growing upon the demised premises for the rent thereof, whether the same is payable wholly or in part in money, or specific articles of property, or products of the premises, or labor, and also for the faithful performance of the terms of the lease. Such lien shall continue for the period of six months after the expiration of the term for which the premises were demised."

Cases involving this section of the statute, in various forms, have frequently been before the court, but in none of them has this question been determined. In *Miles* v. *James*, 36 Ill. 399, it was held that the lien of the landlord was paramount to that of an execution. In *Thompson* v. *Mead*, 67 Ill. 395, and *Wetsel* v. *Meyers*, 41 id. 497, it was held that the lien of the landlord was prior to that of execution and attachment. Substantially the same question was presented in *Prettyman* v. *Unland*, 77 Ill. 206. In *Watt* v. *Scofield*, 76 Ill. 261, it was found that Watt, the purchaser from the tenant of Scofield, had full knowledge of the landlord's lien for rent, and was chargeable with notice that the rent was unpaid. The case, however, went off upon the ground that trover would not lie, and the action being trover, the judgment below was reversed. In *Hunter* v. *Whitfield*, 89 Ill. 229, the court expressly found that the purchaser was chargeable with notice of the landlord's lien, and expressly declined to determine the question as to whether an action would lie against a *bona fide* purchaser for value and without notice. In *Frink* v. *Pratt*, 130 Ill. 327, the question was simply whether trover would lie by the landlord against the purchaser of the crop. It therefore follows that the question may be regarded substantially as one of first impression in this court. The Appellate Court for the Second District, in *Howe* v. *Clark*, 23 Ill. App. 145, held that no action would lie by the landlord against a *bona fide* purchaser of the crop from the tenant, while the Appellate

Court for the Third District, in the present case, has held that the landlord may maintain an action for money had and received if the purchaser has converted the crops into money, and if not, case may be maintained.

We are also referred to decisions of other States, arising under statutes more or less variant, presenting a contrariety of construction and opinion. Among these are *Nesbett* v. *Bartlett*, 14 Iowa, 485, *Westmoreland* v. *Wooten*, 51 Miss. 825, *Scaife* v. *Stovall*, 67 Ala. 237, *Fowler* v. *Rapley*, 15 Wall. 14, *Beal* v. *White*, 94 U. S. 342, *Frazier* v. *Jackson*, 46 Ga. 621, *Heifley* v. *Haynes*, 37 Mich. 535, *Smith* v. *Shell Lake Lumber Co.* 68 Wis. 89, which, with more or less pertinency, sustain the view that the lien of the landlord does not follow the crops into the hands of a *bona fide* purchaser without notice. On the other hand, the cases mainly relied upon are *Kennard* v. *Harvey*, 80 Ind. 37, *Matthews* v. *Burke*, 32 Texas, 419, *Davis* v. *Wilson*, 86 Tenn. 519, *Richardson* v. *Peterson*, 58 Iowa, 724, *Holden* v. *Cox*, 60 id. 449, and perhaps others, the holding in which, more or less directly, is, that the lien of the landlord is paramount as against a *bona fide* purchaser. It must be observed, however, that in many of the latter cases it was sought to enforce the lien as against the property in the hands of the purchaser, and not to charge the purchaser for its conversion. Such was the case in *Matthews* v. *Burke*, *Richardson* v. *Peterson*, *supra*, and others, while in others, as in *Holden* v. *Cox*, it does not appear that the purchaser purchased without notice of the landlord's lien. A review of these authorities will be unnecessary, but an examination will disclose but few cases where the precise question at issue here was involved. It may be conceded that the lien given by the statute would enable the landlord, by the issue of his warrant, to follow the property and to seize it wherever found, as long as it could be identified, as a sheriff or other officer having an execution may follow property subject to the lien of his execution, and the pivotal question in this case would remain undetermined.

It seems to be well settled that a purchaser from a judgment debtor, of personal property subject to the lien of an execution, if made for value, will not be liable, in an action by the plaintiff in execution, for the value of the property. It is said in Kerr on Fraud and Mistake, 201: "Though there be a judgment against the vendor, and the purchaser has notice of it, that fact will not, of itself, affect the validity of the sale of personal property." And so in *Powers* v. *Wheeler*, 63 Ill. 29, where it was sought by a plaintiff in execution to charge the purchaser of personal property with the value thereof, it was alleged in the second count of the declaration, that at the time the execution came into the hands of the officer the defendant therein was the owner of and had in his possession certain property, *i. e.*, three hundred hogs, which were liable to execution and subject to the lien thereof, and that the defendant purchased the same after they became so subject to said lien, etc., and it was said by this court that the want of allegation of knowledge of the judgment and execution, and of a fraudulent purpose on the part of the defendant to defeat the execution, on the part of the purchaser, at the time of purchasing the hogs, clearly rendered this count insufficient, and that a demurrer thereto was properly sustained.

Without further citation of authority to sustain this view, it is manifest from the authorities that the principle upon which a purchaser for value may be charged rests solely upon the ground of fraud. It was said by Lord MANSFIELD in *Cadogan* v. *Kennett*, Cowp. 432, quoted in *Powers* v. *Wheeler, supra:* "If a man knows of the judgment and execution, and, with a view to defeat it, purchases the debtor's goods, it is void, because the purpose is iniquitous." And, continuing the quotation from Kerr, *supra*, it is said: "But if the purchaser, knowing of the judgment, purchases with the view and purpose to defeat the creditor's execution, it is iniquitous and fraudulent, notwithstanding he may have given a full price, for it is assisting the debtor to injure the creditor." And it was held

in the *Powers case*, that the first count of the declaration, which alleged knowledge of the judgment and execution, and that the purchase was made with the purpose of aiding the defendant in execution in defrauding the plaintiff in the collection of his debt, was sufficient to charge the defendant, and that the demurrer thereto was improperly sustained.

Further illustration of the distinction we are seeking to make might be given, but not without unduly extending this opinion. Much light, it seems to us, however, may be cast upon this lien by a consideration of the relation of the landlord to the property in respect of which the lien attaches. Thus, it has been held in *Watt* v. *Scofield* and *Frink* v. *Pratt, supra,* that trover will not lie by the landlord against one who has converted the crop, for the reason that the landlord is not, by virtue of his lien, either the owner or entitled to possession thereof. No better statement, perhaps, can be found in our Reports than that made in the separate opinion of Justices McAllister and Craig, in *Watt* v. *Scofield.* It is there said: "It is true the plaintiff had a lien given by the statute, but it is a mere lien. The landlord had not, by virtue of the lien, alone, and without levy of a distress warrant, a right of possession. He could not take possession of the tenant's crops at any time he chose before the rent was due, nor could he after it was due, by virtue of the lien, alone. The statute gives no such authority. The remedy is, therefore, by action on the case for a fraudulent act intended to impair the landlord's security, when the circumstances warrant, like the cases of a lien by mortgage or execution," citing *Powers* v. *Wheeler, supra.* It is true, as said in *Thompson* v. *Mead, supra,* that the lien of the landlord does not depend upon a levy of a distress warrant, but it has been uniformly held that until such levy the landlord had no right of possession or right of property in the crop. In many of the cases, as in the two already cited, the lien is likened to the lien of an execution, which gives to the officer no right in the property itself, nor will it enable him to main-

tain replevin, trover or trespass prior to the levy of his writ; and this is the current of the authorities everywhere. It should be observed that the decision in the case of *Holden* v. *Cox, supra,* is predicated upon the assumption "that whoever consumes or destroys personal property upon which another has a lien, becomes liable to the lienholder in damages," which, without qualification, is, as we have seen, unwarranted in respect of many liens.

We are unable to distinguish the lien of the landlord under this statute from that of any other "mere lien" created or given by statute, as, that given to execution liens, or the lien given by the statute of Michigan upon logs cut, to the persons employed in cutting them, as shown in *Heifley* v. *Haynes,* 37 Mich. 535, and by the like statute in Wisconsin, construed in *Smith* v. *Shell Lake Lumber Co.* 68 Wis. 89, and like cases.

The argument *ab inconvenienti* is pressed with force, not only in argument, but in several of the cases touching upon the character of the lien given. On the one side it is urged that the statute was intended to give real security to the landlord, and that the effect of so construing the statute as that the landlord shall not have the right of action against a *bona fide* purchaser will render the lien valueless, and it can not therefore be presumed that the legislature intended to subordinate the lien to the right of an innocent purchaser. The force of this argument is much weakened by the considerations, first, that the landlord may pursue the property and seize it under his distress warrant, notwithstanding its alienation; and second, that the landlord may, by the exercise of ordinary diligence, protect himself against the threatened loss.

By an act of the legislature of this State, in force July 1, 1877, which, being *in pari materia* with the section already quoted, must be considered therewith, it was provided, "that if any tenant shall, without the consent of his landlord, sell and remove, or permit to be removed, or be about to sell and remove, or to permit to be removed, from the demised prem-

ises, such part or portion of the crops raised thereon, as shall endanger the lien of the landlord upon such crops for the rent agreed to be paid, it shall or may be lawful for the landlord to institute proceedings by distress before the rent is due," etc. It would seem to have been within legislative contemplation that the tenant had the right to sell the crops, reserving enough to satisfy his landlord's rent. But be this as it may, it is apparent that the landlord has the ready means of protecting his lien and securing himself against loss by the sale and removal of the crop, by the exercise of ordinary diligence and oversight. It must be admitted, on the other hand, that the purchaser of the crop, after its severance and at a distance from the demised premises, is without such means of protection. It is a familiar principle that *bona fide* purchasers are favorites of the law, and the policy has ever been to protect them.

The rule in respect of the construction of statutes was stated at an early day to be: "Acts of parliament are to be so constructed as that no man who is innocent or free from injury or wrong be punished or endamaged." (1 Co. Lit. 31.) And the rule has been, that a statute will not be so construed as to be violative of this fundamental principle, unless the language employed admits of no other reasonable construction. But this statute requires no construction. It is plain and unambiguous. It creates a lien upon the crops grown or growing for the rent of the demised premises, which no one denies. The only question is as to the effect which shall be given to the lien thus created. We are asked to extend, by construction, the force and effect of this lien beyond that of any other mere lien known to the law. In respect of chattel mortgages there is constructive notice by their record. The lien created in favor of mechanics and material-men is upon immovable property, in respect of which the purchaser can readily discern any recent improvements or changes; and yet the lienor, by express statute, to protect himself against subsequent purchasers or

incumbrancers, is required to file notice of his lien in a public office. The lien of an execution is at least based on the fact that there is a judgment rendered by some court of competent jurisdiction, where the record thereof remains. The legislature has in every such case taken precaution that notice shall be given for the protection of *bona fide* purchasers, but in respect of the lien created in favor of landlords no provision is made, but it is left to be governed by the same rules applicable to the liens of executions and the like liens. As we have seen, actual knowledge that the execution is a lien upon property, and that the purchaser has interfered with the same with a fraudulent intent and purpose, is necessary to the maintenance of an action against said purchaser for damages.

It was said in *Grant* v. *Whitehall,* 9 Iowa, 153, that statutory liens have the force and effect of common law liens accompanied by possession; and some other of the cases seem to have followed in holding the same doctrine, upon the authority of that case. It is apparent, from what has preceded, that whatever may be the rule elsewhere, such is not the rule in this State or in respect of the lien being considered. A lienor, at common law, in possession, could maintain trespass against a wrongdoer, or trover against one who should convert the goods, by virtue of his special property therein. It is unnecessary to pursue the want of analogy further, for the possession of the lienor would be notice to the world of his rights, whatever they might be. Here it is manifest, there being no actual possession by the landlord, and no record of which the public are required to or can take notice, the lien, although not a secret lien within the meaning of that term as used in judicial writings, and which is created by contract or act of the parties, is nevertheless secret in the sense that it is unknown by any public record or by the *indicia* of possession, and rests in the breasts of the landlord and tenant.

An examination of the Iowa cases relied upon will show that an exception was created to the lien, and it was made

subject to the course of business of the tenant, "so as not to interfere with sales of property contemplated by the character of the business prosecuted by the tenant, to which the landlord is presumed to have assented upon the leasing of the premises. Thus, a retail dealer may sell goods, in the ordinary course of business, free from the landlord's lien, and the tenant of a farm may sell marketing produce and live stock, which are usually kept for sale by farmers. In such cases the landlord's lien does not follow the property." (*Richardson* v. *Peterson, supra.*) It is to be remembered that that court is speaking only of the right to follow the specific property. Can it be said that where the landlord contracts for the payment of his rent on the first day of January subsequent to the raising of the crops, and demises the premises, to be planted in a crop which will mature and must be marketed months prior to that time, it was within the contemplation of the parties that the lien should attach to such crops? It is a matter of common knowledge that in many parts of the State, in the vicinity of canning establishments, crops are raised in large quantities which must be harvested and disposed of during the summer months. If A rents of B a tract of land to be put into tomatoes, sweet corn, and the like products, with a contract to pay rent the first of January, when the crops must be marketed and sold not later than August, and the rule contended for is to prevail, A must consent to the payment of his rent months in advance of the time it is due under the contract, or lose his crops; or, if the tenant sells such crops to an innocent purchaser without notice, for their full value, although perishable, the purchaser will be called upon to respond to the landlord, who, with complete power to protect himself, has stood by and permitted the sale. In this case, it was admitted that the tenant was insolvent. A portion of the demised premises was put in oats, which must have been harvested in July, and ready for market and in fact sold in August. The expense of the tenant's living and of the raising

of the crop must be paid, yet he may not sell a bushel of these oats, although the rent was not due until January, and though ample of the crop was then retained to more than satisfy the landlord's lien, without rendering the purchaser, who bought in good faith and for full value, liable to the landlord for the amount purchased. To extend, by judicial construction, the effect of the lien created by this statute to this extent, would be unjust and inequitable.

It follows from what has been said, the landlord having no right of property in the crop sold to appellant, and, as said in *Watt* v. *Scofield, supra,* no right to its possession, no action could be maintained by the landlord, except an action on the case for a fraudulent act intended to impair the landlord's security. The gist of the right of recovery in this action is the wrongful or tortious act of the defendant, or the omission of some legal duty, in consequence of which injury has resulted to the plaintiff. Here there was no fraudulent act, no knowledge of the lien of the landlord, or any intention to deprive him of his security or to do any wrongful act, but was a purchase in good faith and for value from the tenant, who is not only the owner of the property, but clothed with the *indicia* of ownership.

The suggestion by the Appellate Court that assumpsit for money had and received, if the defendant has reduced the property to money, would lie against him, is equally untenable. Ordinarily, this action will lie when one person has received money which, in good conscience, belongs to another, and when there is color or pretense of a contract relation existing, and will also lie in some cases where the money has been received or taken tortiously. There is here no contract relation, express or implied, and no tortious taking or receiving. Moreover, the rule, as stated by Mr. Chitty, is: "In order to maintain money had and received, either the money, or the goods for which the plaintiff claims the proceeds, must originally, or at the time of action brought, have belonged to the

plaintiff." (Chitty's Pleading, 353.) And such has been the holding. · Here, as we have seen, the landlord was not the owner of the property, or, by virtue of his lien, only, entitled to its possession. Appellant was an innocent purchaser, without any notice of the right or lien of appellee thereon; and while, as we have seen, the appellee, by virtue of his lien, may follow the property into the possession of the appellant and distrain for his rent, he can not maintain a personal action for damages.

The judgments of the Appellate and circuit courts are reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*·

Mr. JUSTICE CRAIG : I do not concur with the majority of the court in the decision of this case. In my judgment the law is correctly declared by the Appellate Court in 32 Ill. App. 98.