## W. R. Wright, Plaintiff in Error, v. Alva D. Wilson, W. J. Richardson and S. S. Scovil, Defendants in Error.

1. LANDLORD AND TENANT—*purchaser of crops liable to landlord after levy.* A bona fide purchaser of hay from a tenant is liable for its value to the landlord when the latter has levied thereon under a distress warrant and stacked and left the same on the demised premises.

2. LANDLORD AND TENANT—*purchaser of crops liable to landlord after levy.* A landlord causing a levy to be made under a distress warrant on fourteen tons of hay, the same being a bulky article and its removal from the premises not being required, stands as a lienor in possession, and a purchase by others is subject to his rights.

3. LANDLORD AND TENANT—*landlord's lien is not legal title or right of possession.* The statutory lien of a landlord, before levy of a distress warrant, is not a right of possession or title, but a secret right, resting in the breasts of the landlord and the tenant,

unknown by the indicia of possession, or to any record of which the public is required to take notice.

4. LANDLORD AND TENANT—*replevin does not lie on landlord's lien.* The legal title to crops grown on demised premises is in the tenant, and the landlord, though clothed with a lien, has no such title as will enable him to maintain trover for its conversion without first levying or divesting the tenant's title by some mode known to the law.

5. LANDLORD AND TENANT—*purchaser of crops without notice of lien not liable.* A purchaser of crops grown on demised premises, who has no actual knowledge or constructive notice, such as by the levy of a distress warrant, of the landlord's lien, is not liable to the latter.

6. TROVER—*by lienholder in possession lies against all participating.* A lien holder, in actual or constructive possession, may maintain an action in trover against every person who, personally or by agent, commits or participates in the act of conversion by instigating, aiding, or assisting another, or who benefits by its proceeds in whole or in part.

7. TROVER—*lies by one in possession.* Possession, under a claim of title or right, is sufficient to sustain an action for conversion against one who does not show a better right or title.

8. LIENS—*notice of.* A finding of fact by the trial court, that defendants had no knowledge, and had not been put upon actual notice, that certain hay had been raised on premises leased from the plaintiff and was subject to his lien, *held*, not error.

Error to the Circuit Court of Fayette county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed March 10, 1913.

F. M. GUINN and E. B. SPURGEON, for plaintiff in error.

WHITAKER & RICHARDSON and ROBERT I. PUGH, for defendants in error, S. S. Scovil and W. J. Richardson.

PER CURIAM. Judgment was rendered in the Circuit Court for the defendants and against the plaintiffs for costs and from this judgment plaintiff prosecutes this writ of error.

The plaintiff by his declaration alleges that he is the owner of the premises therein described and that

he leased the same to one Alva D. Wilson on March 1, 1911, until March 1, 1912; that on to wit: the 19th day of July, 1911, plaintiff caused a distress warrant to be issued against the said Wilson which distress warrant was on the 20th day of July served upon said Wilson and levied upon fourteen tons of hay grown upon the said premises, and that he did then and there take such hay into his possession and control. That on July 22nd said distress warrant with a correct inventory of said hay was filed in the office of the circuit clerk of Fayette county and summons issued thereon against the said Wilson; and charges that the defendants did then unlawfully convert said hay to their own use, to the damage of the plaintiff of four hundred dollars. To this declaration the defendants filed their plea of general issue.

The evidence discloses that the plaintiff is the owner of the E. ½ of the N. E. ¼ and the N. E. ¼ of the S. E. ¼ sec. 20, the N. E. ¼ of the S. E. ¼ sec. 29, and the N. W. ¼ sec. 28, T. N. R. 3 E., of the third principal meridian, Fayette county, Illinois. That there was approximately between forty and forty-five acres of the land in meadow and that he leased the said lands to Alva D. Wilson for the year 1911. That on July 19, 1911, the plaintiff issued a distress warrant against the said Wilson, placed it in the hands of one Gray who served the same upon Wilson and levied upon the hay in question. That at the time the writ was levied the tenant said he would have nothing more to do with it and Gray says that after he had read the distress warrant to Wilson and gave him a copy of it that, "He just stood around and said I will have no more to do with it, if that is the way you are going to treat me, and he stopped and throwed everything off of the wagon. I says, don't get mad and he drove off and I took the fork and stacked it up and turned it over to Mr. Wright and told Mr. Wright to take charge of it. I turned it over to Mr. Wright. I recognized this inventory as the inventory I made."

It further appears at the time they went to levy the distress warrant that Wilson had some of the hay on his wagon. Plaintiff testifies that he, with a Mr. Steele whom he procured to assist him, stacked the hay, made two stacks of five or six loads in a stack, and that he estimated the amount of it to be about fifteen tons. The evidence further discloses that on the 22nd day of July, 1911, the plaintiff caused the distress warrant to be returned to the office of the circuit clerk of Fayette county, and a summons to be issued thereon and that this summons was duly served on July 27, 1911. Mr. Richardson, on his examination in chief, was asked this question, "I will get you to state if you know—I will first ask you if you purchased this hay from Mr. Wilson? A.—I did. I didn't know at the time where he lived; I knew he was in Fayette County, I didn't know whose farm he was on." Mr. Scovil in his cross-examination was asked, "Q.—You employed the people to press that hay, didn't you; you employed the people and sent them out to press the hay on that place? A.—A few loads, with instructions from Mr. Richardson. Q.—You knew where the hay came from did you not? A.—Well, yes, I knew that the hay was coming from down in that country and Wilson was hauling it." Scovil further says that he purchased the hay of Mr. Richardson and settled with him for it. Each of the defendants deny that they had knowledge of the fact that the hay was raised upon the lands leased by the plaintiff to Wilson.

It is insisted by counsel for plaintiff in error that the court erred in not finding from this evidence that the defendants had actual knowledge or were in possession of such facts as to put them upon notice that this hay was raised upon the premises leased by Wilson from the plaintiff. This was a question of fact and the court heard the evidence and we are not able to say from this record that the court was in error upon this point.

It is further insisted by plaintiff in error that the

judgment of the court is contrary to the law governing this case, and this we regard as the only question to be determined. It is said by counsel for the defendants in error that there is no liability upon the part of the defendants because they are bona fide purchasers of the hay without notice of the landlord's lien thereon for unpaid rent; and in support of this proposition cite the case of Finney v. Harding, 136 Ill. 573. With the doctrine contended for by counsel and that announced in this decision we are in perfect accord and do not believe that under the law a landlord who simply has a lien upon the crops can recover for the conversion of the grain from a bona fide purchaser of the defendant without notice of such lien. But is that the question in this case? The plaintiff in this case had caused a distress warrant to be issued and levied upon the hay and had taken and stacked the hay and had caused the distress warrant to be returned into the office of the clerk of the Circuit Court and a summons issued thereon. The hay was a bulky article and was not of that character that would require the landlord to remove it from off of the premises and it seems to us that the plaintiff stood as a lienor in possession of the property and that any one purchasing the property would buy it subject to such lienor's rights. The statute gives the landlord a lien upon the crops growing upon the demised premises for the rent thereof but does not invest him with the title thereto, either general or special. The legal title is in the tenant until divested in some mode known to the law. This lien is in some respects analogous to the lien given by law under executions. "An execution is a lien upon the personal property of the debtor not exempt, from the time it comes to the officer's hands, and gives the officer the right to seize and sell the same for the satisfaction of the judgment upon which it has issued. But without a levy, or reducing the property of the debtor to possession, the officer, though clothed with a lien, has no such title to the prop-

erty as will enable him to maintain trover for its con-
version by another." Frink v. Pratt & Co., 130 Ill.
331; Mulheisen v. Lane, 82 Ill. 117.

In the case of Finney v. Harding, 136 Ill. 573, re-
ferred to by counsel for defendants in error, page 580,
the court says: "No better statement, perhaps, can
be found in our Reports than that made in the separate
opinion of Justices McAllister and Craig, in Watt v.
Scofield, [76 Ill. 261]. It is there said: 'It is true
the plaintiff had a lien given by the statute, but it is
a mere lien. The landlord had not, by virtue of the
lien, alone, and without levy of a distress warrant, a
right of possession." And in the same case, on page
583, the court says, "A lienor, at common law, in pos-
session, could maintain trespass against a wrongdoer,
or trover against one who should convert the goods, by
virtue of his special property therein. It is unneces-
sary to pursue the want of analogy further, for the
possession of the lienor would be notice to the world
of his rights, whatever they might be. Here it is mani-
fest, there being no actual possession by the landlord,
and no record of which the public are required to or
can take notice, the lien, although not a secret lien
within the meaning of that term as used in judicial
writings, and which is created by contract or act of
the parties, is nevertheless secret in the sense that it
is unknown by any public record or by the *indicia* of
possession, and rests in the breasts of the landlord and
tenant." And in the case of Travers v. Cook, 42 Ill.
App. 582, it is said that, "The landlord has a mere
lien on the 'crops grown and growing,' which does
not entitle him to possession until he has issued his
warrant and executed it, as the law authorizes him to
do. The title and right of possession is in the tenant,
subject to be taken away by appropriate proceedings
to enforce the lien of the landlord. * * * So in the
case at bar it must be said that if all that is necessary
to establish the existence of a landlord's lien in favor
of the plaintiff in error is conceded, yet he had but a

mere lien, and that, without a levy of a distress warrant, did not give him either the ownership of, or an immediate right to, the possession of the property. Having neither he cannot succeed in an action of replevin.'' Possession under a claim of title or right is sufficient to sustain an action for conversion against one who does not show a better right or title. Cyc. vol. 38, p. 2050. ''A lessor entitled to the immediate possession may maintain trover for the wrongful conversion of leased chattels, fixtures, or crops.'' Cyc. vol. 38, p. 2053. ''A lien-holder with possession may maintain an action for the conversion of property.'' ''Every person is liable in trover who personally or by agent commits an act of conversion, or who participates by instigating, aiding, or assisting another, or who benefits by its proceeds in whole or in part.'' Cyc. vol. 38, p. 2054.

We think it sufficiently appears from this evidence that the plaintiff in error issued a distress warrant, levied upon and took possession of the hay in question, stacked it and that the tenant Wilson without the consent or knowledge of the plaintiff in error sold it to the defendant in error Richardson and he to Scovil, after the levy of the distress warrant, and under the authorities above cited we are of the opinion that the defendants in error are liable to the plaintiff in error for the value of the hay appropriated, and the fact that they being bona fide purchasers after the levying of the writ of the plaintiff does not protect them from liability herein, and the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*