[Civil No. 1997.   Filed October 27, 1922.]

[209 Pac. 876.]

# SCOTTSDALE GINNING COMPANY, a Corporation, Appellant, v. W. L. LONGAN, Appellee.

1. LANDLORD AND TENANT — STATUTE GIVING LANDLORD A LIEN ON CROPS OF TENANT, LIBERALLY CONSTRUED.—Revised Statutes of 1913, paragraph 3671, giving the landlord a lien on the crops of a tenant for unpaid rent, is remedial, and must be construed so liberally as to effectuate its palpable purpose, which is manifestly to afford the landlord protection commensurate with the obligation assumed by his tenant.

2. LANDLORD AND TENANT—LANDLORD MAY TAKE POSSESSION OF CROPS OF TENANT TO ENFORCE LIEN FOR RENT.—The lien given by Revised Statutes of 1913, paragraph 3671, to a landlord on the crops of a tenant for unpaid rent, confers upon the landlord the right and remedy to take possession of the crop in order to enforce payment of the rent due and to answer for the damages sustained by the failure of the tenant or his sublessee or assignee to faithfully perform the terms of the lease, and the landlord may retain possession to preserve and enforce his lien.

3. LANDLORD AND TENANT—LANDLORD MAY REPLEVY CROPS OF TENANT FROM ONE HAVING POSSESSION.—The right of a landlord to take possession of the crops of a tenant in order to preserve and protect his lien for rent may be asserted in an action of replevin against one to whom the crops were delivered by the tenant while rent was unpaid.

4. REPLEVIN—ONE NOT IN POSSESSION NOT A NECESSARY PARTY.—In an action in replevin, one claiming an interest in the property, but not in actual or constructive possession, is not a necessary party defendant.

5. WAREHOUSEMEN—ACT PROVIDING GOODS IN HANDS OF BAILEE SHALL NOT BE LEVIED UPON NOT APPLICABLE TO GOODS TRANSFERRED BY TENANT ON WHICH LANDLORD HAS LIEN.—Revised Statutes of 1913, paragraph 5190, providing that goods in the possession of a bailee cannot be levied upon without delivery of negotiable document of title, etc., does not apply to prevent a landlord from recovering cotton delivered by a tenant to a ginning-mill, while the landlord had a lien for unpaid rent, where it does not appear that the cotton was delivered by the tenant as owner.

6. WAREHOUSEMEN—ACT PROVIDING FOR NEGOTIABILITY OF WAREHOUSE RECEIPTS NOT APPLICABLE TO GOODS STORED BY TENANT.—Revised Statutes of 1913, paragraph 5328, providing for the negotiability

of warehouse receipts, does not apply to prevent the landlord from recovering cotton delivered to a ginning-mill by a tenant while the landlord had a lien for unpaid rent, where it does not appear that the delivery was made by the tenant as owner.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Affirmed.

Messrs. Hayes, Laney & Allee, for Appellant.

Messrs. Armstrong, Lewis & Kramer and Mr. James R. Moore, for Appellee.

FLANIGAN, J.—This is an action in replevin brought by appellee to obtain possession of nine bales of cotton in the hands of appellant, Scottsdale Ginning Company. The complaint alleges that the cotton was grown on appellee's farm in Maricopa county by his lessee one Middleton and the sublessees of said Middleton, and that the cotton was delivered to appellant at Scottsdale in said county to be ginned while $1,300 of the agreed rental was due and unpaid. The appellant refusing to give possession of the cotton to appellee upon his demand therefor, this action was brought and writ of replevin issued, under which five of the bales were taken from appellant and delivered to appellee. For answer the ginning company demurred to the complaint on the ground that it did not state a cause of action and upon the further ground that, the tenant, Middleton, not having been joined as a party defendant, there was a defect of parties, and answered also by a general denial of the allegations of the complaint. The demurrers were overruled, trial was had, and judgment went for appellee, awarding him the possession of the cotton by virtue of his landlord's lien thereon.

It is not questioned that a landlord's lien exists on the cotton for the unpaid rental, but it is contended

that this lien is enforceable only in an action to foreclose the same, to which action the tenant is a necessary party defendant, and that, even if replevin is maintainable, the tenant was a necessary party to such action. The landlord's lien statute reads as follows:

"Every landlord shall have a lien on all the property of his tenant not exempt by law, placed upon or used on the leased premises until his rent shall be paid, and such landlord, his agent or attorney, may seize, for rent, any personal property of his tenant that may be found on the premises or in the county where such tenant shall reside, but no property of any other person, although the same may be found on the premises, shall be liable for seizure for rent due from such tenant, and in case of failure of the tenant to allow the landlord, his agent or attorney to take possession of such property for the payment of rent, said landlord shall have the right to reduce such property to his possession by action against the tenant to recover the possession of the same, and may hold or sell the same for the purpose of paying said rent unless said rent shall be paid before sale, and every landlord shall have a lien upon the crops grown or growing upon the leased premises for rent thereof, whether the same is payable wholly or in part in money or specific articles of property or products of the premises or labor, and also for the faithful performance of the terms of the lease, and such lien shall continue for a period of six months after the expiration of the term for which the premises were leased, and, in all cases where the demised premises shall be let or lease assigned, the landlord shall have the same right to enforce his lien against the sublessee or assignee as he has against the tenant to whom the premises were leased." Section 3671, Rev. Stats. 1913.

This paragraph was first enacted as section 4 of Act "No. 56, An act relating to landlords and tenants," adopted March 21, 1895, by the Territorial Legislature. The entire act was brought forward

into the revision of 1901, appearing therein as chapter II of title 29, paragraphs 2692 to 2695 thereof. In the revision of 1913 these paragraphs (with some changes not affecting the construction) appear, respectively, as follows: 2692 as 1551, 2693 as 1552, 2694 as 4714, and 2695 as the one now under consideration, paragraph 3671.

A review of the legislation of the states which have enacted statutes on the subject matter of landlord's liens or in regulation of the common-law right of distress, discloses a great lack of uniformity therein. See *résumé* thereof in Jones on Liens, 3d ed., § 602 et seq. The learned author remarks in the work just cited (section 1049):

"Much of the legislation on the subject of liens has been fragmentary, uncertain and apparently experimental, and it is to be hoped and expected that more comprehensive and better considered legislation will follow."

Our statute exhibits no departure from these general characteristics of such legislation. That part of the paragraph which confers a lien on the tenant's crops undoubtedly came to the legislative attention from the statutes of Illinois. The remainder of the paragraph does not appear to have ever existed in its precise form in the statutes of other states. What the legislature did was to combine in one statute these separate lien provisions on different classes of property. So much is said to point out that the construction of the statute as a composite presents a new question in decision.

It will be seen that, while the landlord is authorized by the statute to seize for rent certain personal property of his tenant therein mentioned, and if the tenant fails to allow the landlord to take possession to reduce the same to possession by action and to hold or sell the same for the purpose of paying the

rent, no such authority is in direct or express terms conferred for the enforcement of the lien given upon the crops grown or growing upon the premises.

The first question which suggests itself is whether a proper construction of the statute leads to the conclusion that the legislature intended that the specific and express remedies provided for the one case should apply also to the other. A construction applying remedies mentioned in the statute itself would, in a very true sense, make the statute a more certain, definite and complete remedial enactment by avoiding the necessity of resorting to implication to ascertain the remedies to be employed to enforce the lien on the crops. Our inclination to such an interpretation cannot be indulged, however, to do violence to the plain terms of the statute. For it is obvious that the omission to specifically authorize the enforcement of the lien on the crops by the same methods as are authorized to enforce the lien on the other property must be taken to point to a legislative purpose to require the use of different remedies for the two cases—an interpretation reached by the application of the principle *"Expressio unius est exclusio alterius."* As will appear in the sequel, the remedies given by implication to enforce the lien on the crops amount substantially to those expressly given to enforce the lien first spoken of, so that it results that the express remedies given in the one case are the practical equivalent of the remedies implied in the other. This may be supposed to supply an argument that the legislative intent was probably to make the express remedies applicable to both cases. But as against this view, there is the insuperable difficulty that the express remedies given to enforce the lien on the property not exempt by law, placed upon or used on the leased premises, being the right to seize the personal property of the tenant that may be found

on the premises, or in the county where the tenant shall reside, and to reduce such property to possession by action and to hold or sell the same, are limited by the statute to an enforcement solely of the tenant's obligation to pay rent. The lien upon the crops, on the other hand, is given, not only to secure the payment of the rent, but in addition the faithful performance of the terms of the lease. The express rights of possession, retention and sale for the purpose of securing the payment of rent can, by no rule of construction of which we are aware, be enlarged so as to extend such remedies to the enforcement of the obligations secured by the lien on the crops.

In any determination of the remedies given by law to the landlord to enforce the lien on the crops, it is to be borne in mind that the statute is a remedial one, and must be construed so liberally as to effectuate its palpable purpose, and that the purpose of the statute was manifestly to afford the landlord protection commensurate with the obligation assumed by his tenant. *Murphey* v. *Brown,* 12 Ariz. 268, 100 Pac. 801; Jones on Liens, 3d ed., vol. 1, § 540.

It being plain that the statute itself provides no express remedy for the enforcement of the lien upon the crops, it is too well settled to require extended citation of authority that appropriate remedies are to be implied. See Sutherland on Statutory Construction, 2d ed., § 507.

Notwithstanding some authority apparently to the contrary, presently to be referred to, it would seem that by conferring the right to a lien at all, and prescribing no other remedy, there was also conferred the right to make the lien effective by reducing the property to possession. In *Wetsel* v. *Mayers,* 91 Ill. 497, under a statute of Illinois which provided that:

"Every landlord shall have a lien upon the crops grown or growing upon the demised premises for

the rent thereof, whether the same is payable wholly or in part in money or specific articles of property or products of the premises, or labor, and also for the faithful performance of the terms of the lease. Such lien shall continue for the period of six months after the expiration of the term for which the premises were demised.''

—it was held that the landlord had a prior lien upon the corn raised on the leased premises, by virtue of which he was entitled to possession thereof, which right he could enforce by action in replevin. It will be noted that this statutory language is identical with the language of our statute so far as it concerns the lien upon the crops. The same ruling under the same statute was made in *Hunter* v. *Whitfield,* 89 Ill. 229. In *Dale et al.* v. *Taylor,* 63 Kan. 674, 66 Pac. 993, it was decided that the existence of a statutory landlord's lien of necessity vests in the landlord a right of possession for its enforcement, and, inasmuch as the lien extends to the whole crop, a corresponding right of possession of the whole crop follows. *Albers* v. *Turley,* 10 Colo. App. 450, 51 Pac. 530, is a decision to the effect that the landlord's lien gives a right of possession enforceable by replevin as against the purchaser of the property on the premises from the tenant, and that the landlord is entitled to retain such possession until the lien is satisfied. See, also, *Edwards* v. *Cottrell,* 43 Iowa, 194; *Brody* v. *Cohen,* 106 Iowa, 309, 76 N. W. 682; *La Grande Nat. Bank* v. *Oliver,* 84 Or. 582, 165 Pac. 682.

An inspection of the leading authorities, which hold that no such right of possession exists to preserve or enforce the lien, discloses that in such cases some other method of enforcing the lien was given by statute. For example, in *Travers* v. *Cook,* 42 Ill. App. 580, the right of possession was denied, there having been no levy of a distress warrant; it being

held essential to fix the lien that such warrant be levied. In *Watt* v. *Scofield,* 76 Ill. 261, the language of the concurring opinion of Mr. Justice McALISTER, later referred to with approval in the case of *Finney* v. *Harding,* 136 Ill. 573, 12 L. R. A. 605, 27 N. E. 289, is that—

"the landlord has not, by virtue of the lien alone, and without levy of a distress warrant, a right of possession. He could not take possession of the tenant's crops at any time he chose, before the rent was due, nor could he, after it was due, by virtue of the lien alone."

The reference to the necessity of the levy of the distress warrant sufficiently indicates that such was the appropriate remedy provided by statute. In the case of *Scaife & Co.* v. *Stovall,* 67 Ala. 237, the question decided was whether a landlord having a lien for rent and advances, or either, could enforce it by attachment on the crops in the possession of a purchaser from the tenant, after its removal from the rented premises, when valuable consideration was paid by the purchaser without notice of the lien. While it was decided that after such sale the lien could not be enforced by attachment, the decision points out that the statute authorized the lien to be enforced by an attachment proceeding before the rights of a *bona fide* purchaser intervened. In the course of the opinion it is said:

"For the removal, or the intended removal of the crop, furnishes a cause for the attachment of it, before the claims, which are liens, fall due. The reason must be that the removal endangers the lien, and one of the perils operating its defeat, was, it is fair to presume, that the rights of a *bona fide* purchaser might intervene in consequence of the removal."

From this language it may be inferred that, if the landlord had been given no statutory right to enforce

his lien by attachment, the law would by implication invest him with a right of possession in order to preserve the lien, at least under circumstances where the obligation it was created to secure might otherwise be defeated.

The case of *Wingard* v. *Banning,* 39 Cal. 543, was an action to enforce a lien on machinery, brought by a carrier for his freight charges against a third party in adverse possession of the property. The carrier had theretofore procured an attachment, in which he had made the affidavit required by the attachment statute in that state, which requires (as does ours) that the affidavit show that the debt sued for is not secured by any lien or mortgage. It was held that if the carrier ever had a lien he lost it by suing out the attachment and levying on the machinery, the court in the course of the opinion saying:

"If the defendant intended to rely upon his lien, and if the property was wrongfully taken from his custody by Mitchell, the remedy was by an action against him, either to recover the possession or for a wrongful conversion, in which the measure of damages would have been the amount of the lien, not exceeding the value of the property. Instead of resorting to this, which was the only appropriate remedy, the defendant not only made an affidavit to the effect that he had no lien, but he instructed the sheriff to seize the property and hold it as a security for his demand. In doing so he clearly abandoned his lien, and elected to rely on his attachment as a security."

We think the foregoing authorities establish the proposition that the lien upon the crop given by our statute, no other remedy being authorized to enforce it, must on common-law principles be held to confer upon the landlord the right and remedy to take possession of such crop in order to enforce the payment of the rent due, and to answer for the damages sustained by reason of the failure of the tenant or his

sublessee or assignee to faithfully perform the terms of the lease. There is also and just as certainly an implication from this right of possession that the property may be retained by the landlord for the purpose of preserving and enforcing his lien.

Appellant contends that, assuming the landlord to have the right to reduce the property to possession, such right must be asserted in an action in equity to foreclose the lien to which the tenant is a necessary party. This undoubtedly would be true were the appellee suing to foreclose his landlord's lien. The express statutory authority does not warrant a sale of the property unless by virtue of a judgment awarding that remedy in an adversary proceeding. No method for the exercise of the right being specified, the authority conferred is plainly not one which the landlord may exercise summarily or by a procedure of his own devising. Likewise, the enforcement of the lien on the crops by sale requires that suit to foreclose be brought by the landlord against proper parties, in accordance with the established practice in such proceedings. But if the authorities cited establish anything, it is that the landlord is entitled to the possession of the property to secure the performance of the obligations assumed by the lessee after the breach thereof, in order to preserve and protect his lien. That such right is properly asserted in an action of replevin cannot be doubted, and the authorities are unanimous that replevin, being essentially an action for possession, must be brought against the one in possession of the property. *Van Gorder* v. *Smith,* 99 Ind. 404; *Griffin* v. *Lancaster,* 59 Miss. 340; *Read* v. *Brayton,* 143 N. Y. 342, 38 N. E. 261; *Moore* v. *Brady,* 125 N. C. 35, 34 S. E. 72; *Glass* v. *Basin & Bay State Min. Co.,* 31 Mont. 21, 77 Pac. 302; *Heidiman-Benoist Saddlery Co.* v. *Schott,* 59 Neb. 20, 80 N. W. 47; *Gilbert* v. *Buffalo Bill's Wild West*

*Co.*, 70 Ill. App. 326; *De Lore* v. *Smith*, 67 Or. 304, 49 L. R. A. (N. S.) 555, 132 Pac. 521, 136 Pac. 13; *Home Payment Jewelry Co.* v. *Smith*, 24 Cal. App. 486, 141 Pac. 933; Cobbey on Replevin, 2d ed., § 432; Wells on Replevin, 2d ed., §§ 134, 634.

And it is also well established that in an action in replevin one claiming an interest in the property, but neither in actual nor constructive possession thereof, is not a necessary party defendant. *Hazlett* v. *Hamilton Storage & Warehouse Co.*, 47 Misc. Rep. 660, 94 N. Y. Supp. 580; *Home Payment Jewelry Co.* v. *Smith, supra; Jenkins* v. *City of Ontario*, 44 Or. 72, 102 Am. St. Rep. 625, 74 Pac. 466; *De Lore* v. *Smith, supra.*

The points finally relied upon for reversal are based upon appellant's interpretations of paragraph 5190 (Sales Act) and paragraph 5328 (Warehouses), Civil Code, Revised Statutes of 1913. These paragraphs read:

"5190. If goods are delivered to a bailee by the owner or by a person whose act in conveying the title to them to a purchaser in good faith for value would bind the owner and a negotiable document of title is issued for them they cannot thereafter, while in the possession of such bailee, be attached by garnishment or otherwise or be levied upon under an execution unless the document be first surrendered to the bailee or its negotiation enjoined. The bailee shall in no case be compelled to deliver up the actual possession of the goods until the document is surrendered to him or impounded by the court."

"5328. All checks and receipts given by any person operating any warehouse for any produce or commodity stored or deposited are hereby declared negotiable, and may be transferred by indorsement of the party to whose order such check or receipt was given or issued, and such indorsement shall be deemed a valid transfer of the commodity represented by such receipt, and may be made either in blank or to the order of another."

Paragraph 5190 has no application to the case, because it does not appear that the delivery of the cotton to appellant was made by the lessees as owners thereof holding the property free from lien. The purpose of this statute was not to displace any existing lien by such delivery, but to provide protection to the holders of negotiable documents of title against subsequent involuntary alienations of the property by attachment, garnishment, execution or the like proceedings, divesting or impairing the rights of ownership represented by the paper indicia of title. The purpose of paragraph 5328 is to make the checks and receipts mentioned negotiable, and thus facilitate the transfer of the goods represented thereby free from equities or defenses affecting the instruments evidencing the title in accordance with the law of negotiable instruments. The statute does not operate to create or better rights of ownership to the goods themselves.

The judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.