[Civil No. 2170.   Filed December 23, 1924.]

[231 Pac. 415.]

# SALT RIVER VALLEY WATER USERS' ASSOCIATION, a Corporation, Appellant, v. PEORIA GINNING COMPANY, a Corporation, and HOWARD M. PEEK and J. R. FLEMING, Doing Business Under the Firm Name and Style of PEEK & FLEMING, a Copartnership, Appellees.

1. WAREHOUSEMEN—LAWS INTERPRETED IN LIGHT OF DESIRE TO CONFORM TO PURPOSE OF UNIFORM ACT.—Local laws must be interpreted in light of desire to make Uniform Warehouse Receipts Act universal in application, bearing in mind purpose of act to make receipts negotiable instruments of title.

2. WAREHOUSEMEN—RECEIPTS PASS TITLE TO BONA FIDE PURCHASER. If possession of one warehousing goods was lawful under absolute or qualified ownership, indorsement and delivery of receipts to *bona fide* purchaser passes full title.

3. LANDLORD AND TENANT—SENIOR LIENOR OF GOODS, IN PERMITTING THEM TO BE WAREHOUSED BY JUNIOR LIENOR, ESTOPPED AS AGAINST BONA FIDE PURCHASER OF RECEIPTS.—Where landlord, having statutory lien on crop of cotton, under Civil Code of 1913, paragraph 3671, permitted mortgagee of crop to take possession and warehouse it in his name, landlord, though prior lienor, is estopped to assert his lien as against *bona fide* purchaser of warehouse receipts.

4. LIBEL AND SLANDER—WRONGFUL ASSERTION OF TITLE ACTIONABLE ONLY WHEN IN BAD FAITH. — Damages on cross-complaint for wrongful assertion of title cannot be allowed unless assertion was malicious.

---

1. Construction of Uniform Warehouse Receipts Act, see note in Ann. Cas. 1917E, 29. See, also, 27 R. C. L. 966.

3. See 27 R. C. L. 974.

4. Actions for slander of title, see note in 87 Am. Dec. 562. See, also, 17 R. C. L. 456.

See (1) 40 Cyc., p. 418 (1926 Anno.). (2) 40 Cyc., p. 425 (1926 Anno.). (3) 36 C. J., p. 484 (1926 Anno.).

APPEAL from a judgment of the Superior Court
of the County of Maricopa. F. H. Lyman, Judge.
Judgment modified and as modified affirmed.

Messrs. Kibbey, Bennett, Gust & Smith, for Appellant.

Mr. Charles Woolf, for Appellees, Peek & Fleming.

STRUCKMEYER, Superior Judge.—On March 1,
1921, H. W. Strangman leased to F. J. Strawn certain premises for the raising of a crop of cotton,
the term of the lease beginning March 1, 1921, and
ending February 1, 1922. Strawn agreed to pay as
rent to Strangman the cost of the electric power furnished by the appellant for the pumping of water
upon the premises demised. Strangman was under
contract with the appellant to pay for the power,
and the amount thereof was made a lien upon the
premises. Pursuant to the lease, Strawn entered
into possession, commenced the raising of a crop of
cotton, and the appellant furnished the electric power
for the pumping of water, the cost of which, however, was not paid by Strawn, either to Strangman,
the lessor, or to the appellant.

The Exchange Bank of Peoria, having taken a
crop mortgage from Strawn to secure a debt due it
from Strawn, advanced the money for the picking and for the ginning of the cotton. The cotton
was ginned at the Peoria Ginning Company which
issued its fifteen negotiable warehouse receipts to the
bank. The appellees, Peek & Fleming, purchased
the negotiable warehouse receipts from the bank
on the tenth day of February, 1922. The picking
and the ginning of the cotton and issuance of the
warehouse receipts was during the term of the lease;

the purchase of the warehouse receipts by Peek & Fleming from the bank, subsequent. Peek & Fleming, however, were purchasers in good faith and without notice of the claim of Strangman, the lessor.

Strangman assigned his claim to the appellant, and the appellant brought this action, seeking herein to pursue the cotton and to have therein declared to it, as such assignee, a landlord's lien superior to the rights of Peek & Fleming. Peek & Fleming answered, alleging themselves to be purchasers of the warehouse receipts in good faith and without notice, upon which answer (and cross-complaint) the court rendered judgment in favor of Peek & Fleming and against the appellant, decreeing Peek & Fleming to be the owners of the fifteen bales of cotton, free and clear of any claim of the appellant, and awarding costs and damages in the amount of storage charges against the appellant.

Two assignments of error are presented. The first questions the correctness of the holding of the court denying a landlord's lien upon the facts. The second relates to the item of storage charges.

May a landlord pursue the landlord's lien, given by Civil Code of 1913, paragraph 3671, into the negotiable warehouse receipts issued by a warehouseman, and against the innocent purchaser thereof? Paragraph 3671 in part reads:

"Every landlord shall have a lien upon the crops grown or growing upon the leased premises for rent thereof, . . . and also for the faithful performance of the terms of the lease, and such lien shall continue for a period of six months after the expiration of the term for which the premises were leased, and, in all cases where the demised premises shall be let or lease assigned, the landlord shall have the same right to enforce his lien against the sublessee or assignee as he has against the tenant to whom the premises were leased."

The section is set out in full in *Scottsdale Ginning Co.* v. *Longan,* 24 Ariz. 356, 209 Pac. 876.

Who of the two parties shall suffer in this action, the landlord to whom the statute declares a continuing lien, or the purchaser of negotiable warehouse receipts, who has purchased the same for value and without notice? The importance of a correct determination thereof is obvious.

Strangman had a landlord's lien upon the crop; the Peoria Exchange Bank had a lien thereon by its chattel mortgage, the latter subject to the former. The primary right of possession was in Strawn, the lessee and grower. Strangman had the right to reduce his lien to a physical possession; likewise the bank had the right to reduce its lien to possession, and by the terms of the mortgage, "hold or sell and dispose of the same at public or private sale." Strangman did not exercise his right; the bank did. It placed its agent in charge of the crop. It caused the crop to be picked and ginned and had the negotiable warehouse receipts issued in its name, thereby clothing itself with the document of title. Its acts as against Strangman and Strawn were not tortious. True, its possession of the crop could have been disturbed and taken away by Strangman exercising his statutory superior right. On the contrary, however, having knowledge of the fact that the bank had taken possession of the crop, and that it was picking and ginning the cotton, he stood by and made no effort to interfere with the bank's possession, though, as to the bank, he did assert the existence of his lien, resting upon the bare assertion thereof only.

The Uniform Warehouse Receipts Act was adopted in the state of Arizona in 1921 (chapter 47, Sess. Laws 1921). To unify the commercial law of the country was the object of the Uniform Warehouse

Receipts Act. The industrial and economic necessity of such unification was pressing. To fully accomplish the purposes of the act, courts must be mindful in their interpretation that the receipts to be issued under the act were to pass current in the commercial world as negotiable documents of title. Local laws must be interpreted in the light of the desire to make the Uniform Warehouse Receipts Act universal in its application throughout the commercial world. *Commercial Bank* v. *Canal Bank,* 239 U. S. 520, Ann. Cas. 1917E, 25, 60 L. Ed. 417, 36 Sup. Ct. Rep. 194 (see, also, Rose's U. S. Notes).

The appellant's argument in support of the landlord's lien is based wholly upon the proposition stated by Professor Williston:

"The bailor, having no title to the goods, cannot, by depositing them with the warehouseman or carrier, and receiving a document of title in return, whatever its form, give a good title to a purchaser of the document, however innocent the purchaser may be." Williston on Sales, 2d ed., § 421.

Upon this proposition the argument is built that the bank could not, by depositing the crop with the warehouse and receiving the negotiable warehouse receipts, and by the negotiation of the receipts to the appellees, though innocent purchasers for value, cut off the superior lien of Strangman, the landlord. Section 41 of the Warehouse Receipts Act provides:

"Section 41. (*Rights of Person to Whom a Receipt has been Negotiated.*) A person to whom a negotiable receipt has been duly negotiated acquires thereby:

"(a) Such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered

by the terms of the receipt had or had ability to convey to a purchaser in good faith for value, and

"(b) The direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him."

It is asserted by the appellant that the decision of this court in *Scottsdale Ginning Co.* v. *Longan,* 24 Ariz. 356, 209 Pac. 876, is decisive of the question here involved. In the latter case this court stated that the purpose of paragraph 5190, Revised Statutes of 1913 (Civil Code, now substantially section 25, of the Warehouse Receipts Act) "was not to displace any existing lien," and the court, passing directly upon paragraph 5328, Revised Statutes of 1913 (Civ. Code), said:

"The purpose of paragraph 5328 is to make the checks and receipts mentioned negotiable, and thus facilitate the transfer of the goods represented thereby free from equities or defenses affecting the instruments evidencing the title in accordance with the law of negotiable instruments. The statute does not operate to create or better rights of ownership to the goods themselves."

It is the concluding sentence of this opinion which is relied upon as determinative of the question here presented. If such interpretation were to be literally applied by the courts to section 41 of the Warehouse Receipts Act, upon the facts as here presented as against an innocent purchaser, then would the provisions of the Uniform Warehouse Receipts Act, contemplating the negotiation of warehouse receipts to an innocent purchaser, be rendered nugatory? The issuance of warehouse receipts does not, indeed, better the title or ownership of the bailor to the goods themselves, but it does not follow that the bailor may not invest a purchaser of the document of title with greater rights in the goods

than he possessed.   The effect of a negotiation of the receipt to an innocent purchaser for value was not involved in the Longan case.   Moreover, section 41 of the Uniform Warehouse Receipts Act enlarged the rights of the holder in due course over the rights declared by paragraphs 5328 and 5329, involved in the Longan case.   Professor Williston says:

"There are four kinds of cases where the holder of a document of title may find that there are no goods behind the document which he holds, though the document was genuine, and properly negotiated by him; . . . second, the depositor of the goods may have had no title to them."   Williston, § 416.

But the bank had title; hence the goods were behind the document of title, and therefore the terms of the receipt not defeated.

Professor Williston, dealing with the subject of the loss of lien of an unpaid seller, says:

"The unpaid seller of goods loses his lien thereon . . . (b) when the buyer or his agent lawfully obtains possession of the goods; (c) by a waiver thereof." Section 510.

Professor Williston also states:

"If the seller is induced by fraud voluntarily to consent to the surrender of possession of goods to the buyer who already is the owner of the property, the legal lien is on principle lost, for the seller has consented to surrender it."   Section 511.

This follows from section 49 of the Uniform Warehouse Receipts Act.   The like result must necessarily follow, though not expressly so provided by the act, in the case of a statutory landlord's lien, where the landlord has permitted the junior lienor to take possession; he has surrendered the goods.   Certainly the unpaid seller's statutory lien, given by the Uniform Sales Act, Civil Code of 1913, paragraph 5149

et seq., is no less a lien than the landlord's statutory lien.

The line of demarcation must rest in the manner of acquiring possession of the goods by the bailor. A thief or finder acquires no rights whatever to the goods, capable of ripening into title, and he may not, by the simple expedient of warehousing the goods, transmute title to another. No rights can flow from him or through him, even to a *bona fide* holder for value of the receipt, but, if the possession was lawful under absolute or qualified ownership, the transmutation of full title itself is completed by the indorsement and delivery of the warehouse receipts to a *bona fide* purchaser for value without notice. *Rummell* v. *Blanchard,* 216 N. Y. 348, Ann. Cas. 1917D, 109, 110 N. E. 765.

Whether or not the conduct of the owner be declared as constituting a waiver or as constituting an estoppel is of no moment. Such conduct alone, particularly in the instant case, may not amount to waiver, as a waiver has been declared by this court as the "voluntary and intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." *Southwest Cotton Co.* v. *Valley Bank,* 26 Ariz. 559, 227 Pac. 988. The intention to waive is noninferable in the instant case. The element necessary to constitute an equitable estoppel, as commonly accepted, may not be fully present, but its application is plainly demanded.

"If the owner of the goods has permitted another to be clothed with the apparent ownership through the possession of warehouse receipts, negotiable in form, there is abundant ground for protecting a *bona fide* purchaser for value to whom the receipts have been negotiated." *Commercial Bank* v. *Canal Bank,*

239 U. S. 520, Ann. Cas. 1917E, 25, 60 L. Ed. 417, 36 Sup. Ct. Rep. 194 (see, also, Rose's U. S. Notes).

We therefore conclude that, where a lienor having the right of possession stands by and permits a junior lienor, also having the right of possession, to take possession and warehouse the goods in his name, such prior lienor is estopped to assert the priority of his lien as against the *bona fide* purchaser for value of the warehouse receipts. Any other rule would be inconsistent with the spirit of the Uniform Warehouse Receipts Act, and would stifle the free negotiation of the receipts in the marts of trade.

The appellees, Peek & Fleming, cross-complaining against the appellant, claimed damages from the appellant, alleging that by the wrongful conduct of the appellant in asserting title they had sustained damages, because the warehouseman, the Peoria Ginning Company, refused to make delivery to the appellees of the cotton. The court allowed damages in the sum of $79. This is asserted as error by the appellant.

The assignment has not been briefed; the appellant contents itself with the assertion that the judgment is based on a novel doctrine. The appellees counter by saying the judgment is correct. This is not a comely manner of presenting a question. The court, certainly an appellate court, is entitled to the benefit of the result of the research of learned counsel.

Liability for the wrongful assertion of title only exists where such assertion is not made in good faith. The assertion, though not tenable, is not wrongful, unless malicious. Unless malicious, it is not actionable. *Kelly* v. *Bank,* 145 Minn. 331, 9 A. L. R. 929, 177 N. W. 347. See, also, Newell, Libel & Slander, 4th ed., § 160 et seq. Damages ensuing from the mere assertion of title made in good faith are *absque injuria.*

The judgment is hereby modified by striking there-from the item of $79 damages, and as thus modified it is affirmed.

McALISTER, C. J., and ROSS, J., concur.

NOTE. — Judge LYMAN, being disqualified, took no part in the decision of this case. Honorable F. C. STRUCKMEYER, of the Superior Court of Maricopa County, was called in and sat in his place and stead.